[No. S153183. Mar. 16, 2009.]

THE PEOPLE, Plaintiff and Appellant, v.
HYUNG JOON KIM, Defendant and Respondent.

**COUNSEL**

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Eric D. Share, Laurence K. Sullivan and Amy Haddix, Deputy Attorneys General, for Plaintiff and Appellant.

Law Offices of Norton Tooby, Norton Tooby; Law Offices of A.J. Kutchins, A.J. Kutchins; Law Offices of Joel Franklin and Joel Franklin for Defendant and Respondent.

Ralph S. Greer as Amicus Curiae on behalf of Defendant and Respondent.

Immigrant Crime and Justice and Karl W. Krooth for National Immigration Project of the National Lawyers Guild, Inc., as Amicus Curiae on behalf of Defendant and Respondent.

Linda Starr, Paige Kaneb and Michael Willemsen for Northern California Innocence Project as Amicus Curiae on behalf of Defendant and Respondent.

Law Offices of Michael K. Mehr, Michael K. Mehr and Rachael Keast for Immigrant Legal Resources Center, San Francisco Public Defender, UC Davis Immigration Law Clinic, San Francisco Public Defender's Office, South Asian Network and Asian Law Caucus as Amici Curiae on behalf of Defendant and Respondent.

Denise M. Gragg, Assistant Public Defender (Orange), for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Respondent.

Trutanich • Michel, C. D. Michel, Brigid Joyce, Joseph A. Silvoso and Erin Eckelman for California Rifle & Pistol Association and Law Enforcement Alliance of America as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**WERDEGAR, J.**—Defendant Hyung Joon Kim was born in South Korea and entered this country legally with his parents when he was a young child. He has lived in this country as a legal resident for more than two decades but never became a citizen. As a result of his multiple criminal convictions, the federal government now seeks to remove him from the country and return him to South Korea. He petitioned for a writ of error *coram nobis* in the trial court, seeking to vacate the state felony convictions that triggered his federal removal proceedings. His case is one of two we decide today in which litigants seek to challenge the validity of old, otherwise final criminal convictions to eliminate them as a possible basis for removal from this country by federal authorities. As we explain in a companion case (*People v. Villa* (2009) 45 Cal.4th 1063 [90 Cal.Rptr.3d 344, 202 P.3d 437]), a person in federal immigration detention is ineligible for a writ of habeas corpus from a state court if his state sentence and probation or parole have been completed. In the instant case, we conclude defendant Kim is ineligible for a writ of error *coram nobis* on the facts of this case. Accordingly, because the Court of Appeal below correctly reversed the trial court's decision to issue the writ, we affirm.

### I. FACTS

#### A. *Background*

Defendant Kim was born in South Korea in 1977. His parents brought him and his brother to this country on a family visa when defendant was six years old. He became a lawful permanent resident in 1986 and has resided

continuously in this country since his initial entry. His mother and brother are naturalized citizens; his father is a lawful permanent resident.

While still a juvenile, defendant was arrested on several occasions and eventually became a ward of the court in February 1995, having been found to be a minor in possession of live ammunition, a misdemeanor. (Pen. Code, § 12101, subd. (b).)[1] The juvenile court placed him on probation on certain conditions, including a specific prohibition against possessing weapons or ammunition. Defendant turned 18 years old in December of that year.

In April 1996, while he was still on juvenile probation, defendant and two juveniles burglarized a toolshed behind a residence in Pacific Grove, Monterey County, stealing three firearms. When police searched a storage shed to which defendant had access, they found the three stolen guns, some ammunition, and a ski mask. Police also found a fourth gun, a .38-caliber revolver with matching ammunition and an attached laser sight that had been stolen in a burglary in the City of Marina in 1995. Defendant was convicted of first degree burglary (§ 459), but imposition of sentence was suspended and he was sentenced to five years' probation on the condition he serve 180 days in jail. He was, however, granted an early release, with 117 days suspended, so that he could begin his freshman year at the University of California, Santa Barbara (UCSB).

Later that same year (1996), defendant was arrested and convicted of misdemeanor petty theft and second degree burglary for stealing four CD-ROM games, batteries, and cables from the UCSB bookstore. (§§ 484, subd. (a), 459, 460, subd. (b), 461, subd. 2.) The total value of the stolen merchandise was about $184. He was sentenced to three years' probation on the condition he serve 30 days in jail, which was suspended until the end of the school year.

In February 1997, defendant's parents gave him some money to buy groceries before returning to college. He went to a Costco store in Monterey County with two younger friends, one a juvenile. They proceeded to shoplift three prepaid telephone cards and a video game. They acted in concert, two of them using their bodies to shield the third from other customers while packages were opened. The trio then purchased other items and attempted to leave the store. Their activities had been observed by security personnel, however, and security guards detained them. Costco recovered the stolen merchandise, which was valued in the aggregate at less than $100.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

As a result of this last incident, the People charged defendant with felony burglary for the Costco crimes (§ 459), a strike (§ 1170.12, subd. (c)(1)) for the toolshed burglary, a misdemeanor petty theft with a prior (§§ 666, 484), and misdemeanor contributing to the delinquency of a minor (§ 272). Defendant negotiated a plea bargain in which he would plead guilty to felony petty theft with a prior theft-related conviction and admit the strike allegation. In exchange, the prosecution agreed to dismiss the charges of felony burglary and misdemeanor contributing to the delinquency of a minor. Significantly, in connection with this plea, defendant personally executed a written waiver of rights and placed his initials next to several statements, including this one: "I understand that if I am not a citizen of the United States a plea of 'Guilty'/'No Contest' could result in deportation, exclusion from admission to this country, and/or denial of naturalization."

The trial court accepted the plea and noted in the record that it would reserve jurisdiction to strike the prior serious felony allegation at the time of sentencing. At sentencing in October 1997, the trial court struck the strike allegation and sentenced defendant to the upper term of three years for felony petty theft with a prior and to the lower term of two years, to be served concurrently, for violating his probation in the Monterey County toolshed burglary case.

### B. *Subsequent Federal Proceedings and Defendant's Responses*

Defendant's 1997 plea to felony petty theft with a prior theft-related conviction plunged him into a labyrinth of legal problems. On December 16, 1998, the Immigration and Naturalization Service (INS)[2] initiated proceedings for defendant's mandatory deportation based on his status as an alien who has been convicted of an "aggravated felony,"[3] which for deportation purposes is defined as "a theft offense . . . or burglary offense for which the term of imprisonment [is] at least one year." (8 U.S.C. § 1101(a)(43)(G).) A few months later, on February 1, 1999, defendant completed his three-year term (reduced by applicable credits) and was released on parole. He was detained by the INS the next day (see *Kim v. Ziglar* (9th Cir. 2002) 276 F.3d

---

[2] Like the Court of Appeal below and the parties, we will continue to refer to the federal authorities as the "INS," although that agency has since been reorganized into the Department of Homeland Security. Deportations are now prosecuted by United States Immigration and Customs Enforcement. (See *U.S. v. Garcia-Beltran* (9th Cir. 2006) 443 F.3d 1126, 1129, fn. 2 ["The INS is now known as Immigration and Customs Enforcement (ICE)."].)

[3] Title 8 United States Code section 1227(a)(2)(A)(iii) provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable." The parties refer to deportation based on a conviction of an aggravated felony as "mandatory" removal, presumably because such aliens are subject to mandatory detention by the INS (*id.*, § 1226(c)(1)(B)) and are ineligible for discretionary cancellation of removal (*id.*, § 1229b(a)(3)).

523, 526) and held in federal custody without bond. He was eventually released from INS custody on August 20, 1999.

Defendant successfully completed his three-year parole on February 1, 2002. On August 16 of that year, the INS filed an amended charging document, alleging that in addition to mandatory removal, defendant was also subject to discretionary removal due to his having been convicted of two crimes involving moral turpitude: the toolshed burglary and the Costco felony petty theft with a prior. (8 U.S.C. § 1227(a)(2)(A)(ii).)[4]

Defendant then began filing collateral challenges to his various state convictions in an attempt to eliminate them as the basis for deportation. In 2003, he filed a nonstatutory motion to vacate his three-year sentence (but not the actual convictions) for the Costco petty theft with a prior and the concurrent two-year sentence for the toolshed burglary. Although both sentences had been served, he claimed that when he entered his plea, he did not know the sentences would subject him to mandatory deportation by the INS. When the trial court asked the prosecutor whether he opposed the motion, the prosecutor replied: "No. I just want to say we're not opposing it. That's as far into it as I want to get." The trial court granted the motion, vacated the sentences, and resentenced defendant to serve a one-day probation on the condition he serve 364 days in jail, with credit for time served.[5] The result of this resentencing was that defendant served no additional time in prison (having already served a full three-year sentence), but his official sentence for the Costco crimes was now modified to be one day short of a year, thereby avoiding having either crime characterized as an aggravated felony for immigration purposes.[6]

As a result of this retroactive resentencing, the INS amended its charging document, dismissing the allegation of mandatory removal based on the aggravated felony conviction (8 U.S.C. § 1227(a)(2)(A)(iii)) and clarifying that it was proceeding only on the basis of discretionary removal as a result

---

[4] Title 8 United States Code section 1227(a)(2)(A)(ii) provides: "Any alien who at any time after admission is convicted of *two or more crimes involving moral turpitude*, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." (Italics added.) We assume the parties refer to this as "discretionary" removal because aliens in violation of this provision are not subject to mandatory preremoval detention and may seek discretionary cancellation of removal. (8 U.S.C. § 1229b(a).)

[5] As the People did not seek appellate review of the court's order, that matter is now final and its merits are not before us.

[6] *In re Song* (2001) 23 I. & N. Dec. 173, 174 (resentencing to less than one year removes a crime from the category of aggravated felony); see 6 Gordon et al., Immigration Law and Procedure (rev. ed. 2007) Deportation, section 71.05[2][b], pages 71-160 to 71-160.1 and footnote 435 (rel. 115-12/06).

of defendant's two convictions involving moral turpitude (8 U.S.C. § 1227(a)(2)(A)(ii)). The elimination of the allegation based on an aggravated felony conviction opened another avenue of possible relief for defendant in that he became eligible to move for cancellation of removal.[7] He so moved, and on June 27, 2003, a federal immigration judge granted his motion, thereby permitting him to remain in the country. On the INS's appeal to the Board of Immigration Appeals (BIA), however, the BIA reversed, concluding it was "unconvinced that [defendant's] long residence in the United States, his family ties and his rehabilitation outweigh his substantial criminal history and recidivism." Consequently, the BIA ordered defendant "removed from the United States to South Korea."

Despite this setback, defendant continued his efforts to avoid deportation. First, he filed a petition for a writ of habeas corpus in federal district court. That matter has since been removed to the Ninth Circuit Court of Appeals under the REAL ID Act of 2005.[8] Second, he began proceedings to vacate his remaining state court convictions. On October 19, 2004, the Santa Barbara County Superior Court granted his motion to vacate his misdemeanor convictions for petty theft and second degree burglary stemming from his thefts at the UCSB campus bookstore. The same court later dismissed both charges. Having ameliorated the effect of his convictions for petty theft with a prior (the Costco crimes) and burglary (the toolshed crime) by having his aggregate sentence reduced to less than one year, and having obtained dismissal of his Santa Barbara misdemeanor theft-related convictions, all that remained for defendant to do was to obtain dismissal of his Costco conviction for petty theft with a prior, which would leave him with only a single conviction for a crime of moral turpitude (the toolshed burglary) and thus ineligible for removal from the country (because 8 U.S.C. § 1227(a)(2)(A)(ii) requires

---

[7] Title 8 United States Code section 1229b(a) provides: "The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—[¶] (1) has been an alien lawfully admitted for permanent residence for not less than 5 years, [¶] (2) has resided in the United States continuously for 7 years after having been admitted in any status, and [¶] (3) *has not been convicted of any aggravated felony.*" (Italics added.)

[8] On May 11, 2005, "President Bush signed into law the REAL ID Act of 2005 ('RIDA'), Pub.L. No. 109-13, Div. B, 119 Stat. 231, codified as amended at 8 U.S.C. § 1252. Section 106(a) of RIDA eliminated habeas corpus as an avenue of review for aliens seeking to challenge a final order of removal, making petitions for review in the courts of appeals the 'sole and exclusive means for judicial review' of a removal order. *See* § 1252(a)(5). At the same time, Congress restored jurisdiction to the courts of appeals over petitions for review brought by criminal aliens, creating a unitary path of review for criminal and non-criminal aliens alike. *See* § 1252(a)(2)(D) (permitting review of 'constitutional claims or questions of law' raised by any alien in a petition for review); *see also Puri v. Gonzales*, 464 F.3d 1038, 1041–42 (9th Cir. 2006) (describing how RIDA created jurisdiction over criminal aliens' petitions for review). Importantly, however, Congress did not modify the requirement that petitions for review must be filed within 30 days of the issuance of a final order of removal by the BIA. *See* § 1252(b)(1)." (*Singh v. Mukasey* (9th Cir. 2008) 533 F.3d 1103, 1105.)

convictions of "two or more crimes involving moral turpitude"). That brings us to the present proceeding.

### C. *The Proceedings Below*

On July 8, 2005, defendant filed two motions in Monterey County Superior Court. The first, termed a "MOTION TO VACATE JUDGMENT (CORAM NOBIS)," sought to vacate his 1997 guilty plea to felony petty theft with a prior theft-related conviction (the Costco crimes) on the ground that the judgment was "based on a mistake of fact, in that no one knew: [¶] (a) South Korea was incarcerating Jehovah's Witnesses (like Mr. Kim) for three years in prison for refusing on religious grounds to serve in the military, and that Mr. Kim would face that fate if deported as a result of this plea; [¶] (b) the *problem* that the plea of guilty would cause defendant's deportation, even without a sentence of one year in custody; or [¶] (c) the *solution* that an equivalent plea to burglary under Penal Code section 459, if properly framed, would not cause this result, and if these facts had been known to court and counsel, the plea would not have been entered. . . . [¶] The plea was therefore not knowing, intelligent, free or voluntary, and was void *ab initio* in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and parallel provisions of the California Constitution." (Original italics and underscoring.)

The second motion, termed a "NON-STATUTORY MOTION AND MOTION TO VACATE JUDGMENT," sought to vacate the same 1997 guilty plea on different grounds. This motion alleged defendant's state and federal constitutional rights were violated because his trial counsel "rendered ineffective assistance of counsel for his failure adequately to investigate the immigration consequences of the conviction" and also "for his failure to defend Mr. Kim against a plea that would result in mandatory deportation or to make any effort to get an equivalent nondeportable conviction."

In support of these motions, defendant's then trial attorney, Thomas Worthington, provided a declaration stating that at the time of defendant's pleas, counsel "was unaware . . . that a conviction of petty theft with a prior conviction would be considered a 'crime of moral turpitude' by the immigration authorities, and trigger deportation for Mr. Kim, exposing him to arrest by the immigration authorities, requiring him to post a bond and hire immigration counsel, and resulting in his mandatory deportation if he was unsuccessful in obtaining a waiver of deportation. Therefore, I did not advise Mr. Kim of the actual adverse immigration consequences of this plea. [¶] . . . If I had been aware that an alternative plea to burglary, in the language of the

statute, entry with intent to commit 'theft or any felony,' would have avoided deportation on account of a crime of moral turpitude conviction, I believe there is a reasonable probability the prosecution and [trial] court would have been willing to agree to this plea."

In a joint opposition to both motions, the prosecution argued it would have been improper to change the wording of the plea in order to thwart the immigration consequences flowing from the plea, that no mistake of fact supports issuance of a writ of error *coram nobis*, that evidence of defendant's religious beliefs is not relevant, that a correction nunc pro tunc is inappropriate because defendant does not seek to correct a clerical error, that no court authority exists to grant a nonstatutory motion to vacate and to withdraw the plea, that defense counsel was not ineffective, and that the trial court should not attempt to nullify the order of another court (i.e., the BIA). In support, the prosecutor in defendant's petty theft case, Charles Olvis, provided a declaration stating: "I would not have agreed to allow the defendant to plead to a charge to assist the defendant in thwarting actual or potential immigration consequences. I specifically would not have agreed to a plea to a felony violation . . . with the altered language to reflect 'any felony.' I believe that a criminal conviction should appropriately reflect the criminal conduct engaged in by the defendant."

After a hearing, the trial court granted both motions. Regarding the nonstatutory motion to vacate, the court explained: "[T]he Court does find that—and based in no small part on Mr. Worthington's own declaration in that regard—that given the facts presented in this case, the fact that the defendant is a Korean, that was known at the time. It was clear that there was some belief that there was—there were ties to Korea and even some possibility of him leaving the country for Korea, that immigration should have probably been an issue. [¶] As to the prejudice, based on my 30-plus years of experience in this business, I believe it's not only reasonably possible but frankly highly likely that had Mr. Worthington realized what the situation was, he would have been able to find a way to avoid the immigration consequences of . . . the defendant's conduct. I base that in part on actually Judge Curtis's remarks at the time of sentencing . . . wherein he actually demonstrates some sympathy for and some optimism for the defendant's future in striking the strike. . . . [¶] So the Court does find that there is prejudice, given the facts and circumstances of this particular case, and that it's likely Mr. Worthington would have had an opportunity to prevail on either or probably both the [prosecutor] and Judge Curtis in part in arriving at a disposition that . . . would not have incurred the consequences that Mr. Kim faces at this time." The trial court granted the petition for a writ of error *coram nobis* as well, explaining: "I don't know if it's necessary for the Court

to even rule on that at this point, but for the sake of the record, the Court—I must say I'm a lot less sanguine about the distinctions between a mistake of fact and mistake of law and how you categorize those. But so the record is clear, the Court grants that motion as well on the grounds that there was a mistake in fact which materially affected the result."

The Court of Appeal reversed, and we granted review.

## II. Discussion

### A. *The Writ of Error* Coram Nobis

#### 1. *Background*

The writ of error *coram nobis* is a nonstatutory, common law remedy whose origins trace back to an era in England in which appeals and new trial motions were unknown.[9] "Far from being of constitutional origin, the 'proceeding designated "*coram nobis*" . . .' . . . was contrived by the courts at an early epoch in the growth of common law procedure to provide a corrective remedy 'because of the absence at that time of the right to move for a new trial and the right of appeal from the judgment.' " (*People v. Sica* (1953) 116 Cal.App.2d 59, 62 [253 P.2d 75].) The grounds on which a litigant may obtain relief via a writ of error *coram nobis* are narrower than on habeas corpus (*In re Lindley* (1947) 29 Cal.2d 709, 724–725 [177 P.2d 918]); the writ's purpose "is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court" (*People v. Adamson* (1949) 34 Cal.2d 320, 326–327 [210 P.2d 13]).

We described the writ of error *coram nobis* in *People v. Reid* (1924) 195 Cal. 249 [232 P. 457]:[10] "The principal office of the writ of error *coram nobis* was to enable the same court which had rendered the judgment to reconsider it in a case in which the record still remained before that court. The conventional language of this writ in the King's Bench makes reference to the record 'which remains before us [the king], *quae coram nobis resident.*' In the Common Pleas the form of the writ was ['*]coram vobis,*' 'before you' (the judges). The most comprehensive statement of the office and function of

---

[9] Although the writ technically is available in civil as well as criminal cases (see generally 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Judgment, § 182, p. 211), "[i]n California, the writ has been used almost exclusively to attack judgments in criminal cases" (*id.,* § 183, p. 212). We address in this case the availability of the writ in criminal cases only.

[10] *Reid* was overruled on other grounds in *People v. Hutchinson* (1969) 71 Cal.2d 342, 347–348 [78 Cal.Rptr. 196, 455 P.2d 132].

this writ which has come to our notice is the following . . . : 'The office of the writ of *coram nobis* is to bring the attention of the court to, and obtain relief from, errors of fact, such as the death of either party pending the suit and before judgment therein; or infancy, where the party was not properly represented by guardian, or coverture, where the common-law disability still exists, or insanity, it seems, at the time of the trial; or a valid defense existing in the facts of the case, but which, without negligence on the part of the defendant, was not made, either through duress or fraud or excusable mistake; these facts not appearing on the face of the record, and being such as, if known in season, would have prevented the rendition and entry of the judgment questioned.' " (*Reid,* at pp. 254–255.)

■ We long ago emphasized the limited nature of this legal remedy. Quoting from an old treatise, we opined the writ of error *coram nobis* " 'does not lie to correct any error in the judgment of the court nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end of litigation. . . . The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment*; and which without fault or negligence of the party, was not presented to the court.' " (*People v. Mooney* (1918) 178 Cal. 525, 528 [174 P. 325].) As one Court of Appeal described it: "It is not a writ whereby convicts may attack or relitigate just any judgment on a criminal charge merely because the unfortunate person may become displeased with his confinement or with any other result of the judgment under attack." (*People v. Hayman* (1956) 145 Cal.App.2d 620, 623 [302 P.2d 810].)

With the advent of statutory new trial motions, the availability of direct appeal, and the expansion of the scope of the writ of habeas corpus, writs of error *coram nobis* had, by the 1930's, become a remedy "practically obsolete . . . except in the most rare of instances" (*People v. Lumbley* (1937) 8 Cal.2d 752, 755 [68 P.2d 354]) and applicable to only a "very limited class of cases" (*People v. Sandoval* (1927) 200 Cal. 730, 737 [254 P. 893]). (See Prickett, *The Writ of Error Coram Nobis in California* (1990) 30 Santa Clara L.Rev. 1, 14–24; 6 Witkin & Epstein, Cal. Criminal Law, *supra,* Criminal Judgment, § 182, p. 211 ["The statutory motion for new trial has, for most purposes, superseded the common law remedy; and, until recent years, coram nobis was virtually obsolete in California."].)

■ The seminal case setting forth the modern requirements for obtaining a writ of error *coram nobis* is *People v. Shipman* (1965) 62 Cal.2d 226 [42

Cal.Rptr. 1, 397 P.2d 993]. There we stated: "The writ of [error] *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' " (*Id.* at p. 230.) These factors set forth in *Shipman* continue to outline the modern limits of the writ. (*People v. McElwee* (2005) 128 Cal.App.4th 1348, 1352 [27 Cal.Rptr.3d 448].)

█ Several aspects of the test set forth in *Shipman* illustrate the narrowness of the remedy. Because the writ of error *coram nobis* applies where *a fact* unknown to the parties and the court existed at the time of judgment that, if known, would have prevented rendition of the judgment, "[t]he remedy does not lie to enable the court to correct errors of law." (*People v. Banks* (1959) 53 Cal.2d 370, 378 [1 Cal.Rptr. 669, 348 P.2d 102]; see *People v. McElwee, supra*, 128 Cal.App.4th at p. 1352 [defendant's belief he would serve only 15 years in prison "was not a mistake of fact but one of law"].) Moreover, the allegedly new fact must have been unknown and must have been in existence at the time of the judgment. (*People v. Shipman, supra*, 62 Cal.2d at p. 230.)

For a newly discovered fact to qualify as the basis for the writ of error *coram nobis*, we look to the fact itself and not its legal effect. "It has often been held that the motion or writ is not available where a defendant voluntarily and with knowledge of the facts pleaded guilty or admitted alleged prior convictions because of ignorance or mistake as to the legal effect of those facts." (*People v. Banks, supra*, 53 Cal.2d at p. 378.)

█ Finally, the writ of error *coram nobis* is unavailable when a litigant has some other remedy at law. "A writ of [error] *coram nobis* is not available where the defendant had a remedy by (a) appeal or (b) motion for a new trial and failed to avail himself of such remedies." (*People v. Blalock* (1960) 53 Cal.2d 798, 801 [3 Cal.Rptr. 137, 349 P.2d 953]; see *People v. Howard* (1965)

62 Cal.2d 237, 238 [42 Cal.Rptr. 7, 397 P.2d 999] [claims could have been raised on direct appeal]; *People v. Adamson, supra,* 34 Cal.2d at p. 327 [claims should have been raised in a petition for a writ of habeas corpus].) "The writ of error *coram nobis* is not a catch-all by which those convicted may litigate and relitigate the propriety of their convictions *ad infinitum.* In the vast majority of cases a trial followed by a motion for a new trial and an appeal affords adequate protection to those accused of crime. The writ of error *coram nobis* serves a limited and useful purpose. It will be used to correct errors of fact which could not be corrected in any other manner. But it is well-settled law in this and in other states that where other and adequate remedies exist the writ is not available." (*People v. Martinez* (1948) 88 Cal.App.2d 767, 774 [199 P.2d 375].)

A quick perusal of the types of situations in which the writ of error *coram nobis* has issued illustrates these limitations. Thus, the writ has issued in these circumstances: "Where the defendant was insane at the time of trial and this fact was unknown to court and counsel [citations].[11] Where defendant was an infant and appeared by attorney without the appointment of a guardian or guardian *ad litem* [citations]. Where the defendant was a *feme covert* and her husband was not joined [citation]. Where the defendant was a slave and was tried and sentenced as a free man [citation]. Where the defendant was dead at the time judgment was rendered [citations]. Where default was entered against a defendant who had not been served with summons and who had no notice of the proceeding [citations]. Where counsel inadvertently entered an unauthorized appearance in behalf of a defendant who had not been served with process [citation]. Where a plea of guilty was procured by extrinsic fraud [citation]. Where a plea of guilty was extorted through fear of mob violence [citations]. Where defendants and their counsel were induced by false representations to remain away from the trial under circumstances amounting to extrinsic fraud [citation]. Where by the failure of the clerk to properly file an answer the party was deprived of his defense [citation]." (*People v. Reid, supra,* 195 Cal. at pp. 258–259.) More recently, a lower federal court granted *coram nobis* relief where, many years after the fact, a Japanese-American plaintiff convicted of a misdemeanor for failing to report to a civilian control center in preparation for internment during World War II proved the federal government had intentionally suppressed favorable evidence showing the absence of any military necessity for removing those of

---

[11] In *People v. Shipman, supra,* 62 Cal.2d 226, we held that the defendant's allegations that he "was insane at the time of the offense, but did not present this defense because he was also insane at the time of the plea" (*id.* at p. 229), "if true, would meet the requirements for a writ of [error] *coram nobis.* His legal sanity at the time of the crime is a material question that was neither put in issue nor tried." (*Id.* at p. 233; cf. *People v. Welch* (1964) 61 Cal.2d 786 [40 Cal.Rptr. 238, 394 P.2d 926] [same, with regard to a petition for a writ of error *coram vobis*].)

Japanese ancestry from the West Coast. (*Hirabayashi v. United States* (W.D.Wn. 1986) 627 F.Supp. 1445, affd. in part & revd. in part (9th Cir. 1987) 828 F.2d 591.)

By contrast, the writ of error *coram nobis* was found unavailable in the following situations: where trial counsel "improperly induced" the defendant to plead guilty to render him eligible for diversion and the trial court eventually denied diversion (*In re Nunez* (1965) 62 Cal.2d 234, 236 [42 Cal.Rptr. 6, 397 P.2d 998]); where the defendant pleaded guilty to having a prior felony conviction when he was eligible to have the prior reduced to a misdemeanor (*People v. Banks, supra*, 53 Cal.2d at p. 379 [mistake of law]); where the defendant discovered new facts that would have bolstered the defense already presented at trial (*People v. Tuthill* (1948) 32 Cal.2d 819, 827 [198 P.2d 505] [concluding that although the new facts "would have been material and possibly beneficial to the defendant" at trial, they would not have precluded entry of the judgment]); where the defendant mistakenly believed his plea to second degree murder meant he would serve no more than 15 years in prison (*People v. McElwee, supra*, 128 Cal.App.4th at p. 1352 [this was "not a mistake of fact but one of law"]); where the defendant claimed neither his attorney nor the court had advised him before he pleaded that his convictions would render him eligible for civil commitment under the Sexually Violent Predators Act (SVPA) (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 546 [90 Cal.Rptr.2d 536] ["Defendant's ignorance regarding the potential for civil commitment under the SVPA is a legal, not a factual, question."]); and where the defendant challenged "the legality of his arrest, the identity of the informant, and the failure of the court to make findings on the prior convictions" (*People v. Del Campo* (1959) 174 Cal.App.2d 217, 220 [344 P.2d 339] [*coram nobis* denied on the ground that "[a]ll of these matters could have been raised on appeal"]).

Likewise any number of constitutional claims cannot be vindicated on *coram nobis*. (See, e.g., *People v. Howard, supra*, 62 Cal.2d at p. 238 [claim of an unconstitutional sentence and inadequate representation]; *People v. Blalock, supra*, 53 Cal.2d at p. 801 [double jeopardy]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328] [ineffective assistance of counsel]; *People v. Parseghian* (1957) 152 Cal.App.2d 1, 3 [312 P.2d 81] [improper admission of evidence]; see generally Prickett, *The Writ of Error Coram Nobis in California, supra*, 30 Santa Clara L.Rev. at pp. 24–28.)

We now apply these rules to the trial court's decision to issue a writ of error *coram nobis*, mindful that a lower court's ruling on a petition for the writ is reviewed under the abuse of discretion standard. (*People v. McElwee,*

*supra,* 128 Cal.App.4th at p. 1352; *People v. Ibanez, supra,* 76 Cal.App.4th at p. 544; cf. *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686] [trial court's ruling on the defendant's motion to vacate his conviction under § 1016.5 reviewed for abuse of discretion].)

## 2. *Application to This Case*

### a. *Procedural bars to relief*

Defendant contends he is eligible for a writ of error *coram nobis* as a result of two distinct mistakes of fact that, he claims, undermine the validity of his guilty plea to felony petty theft with a prior theft-related conviction. First, he claims he "was not aware, prior to entering his plea, of the fact that his plea to a petty theft with a prior would qualify as a 'crime of moral turpitude' and subject him to deportation to South Korea." Second, he contends he did not know at the time of his plea that "if deported, he would almost certainly face religious persecution, including beatings and imprisonment by the authorities because of his religious objections to serving in the South Korean army." In his nonstatutory motion to vacate his plea, he also contends he is entitled to relief because Worthington, his trial counsel, was constitutionally ineffective in failing to adequately investigate the true immigration consequences of defendant's plea, and in failing to arrange for defendant to plead to a nondeportable offense.

■ As a nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis* (*People v. Shipman, supra,* 62 Cal.2d at p. 229, fn. 2; *People v. Adamson, supra,* 34 Cal.2d at p. 325), we consider these claims together.

■ Before we turn to the merits of these claims, however, we find defendant's entitlement to the writ fails at the threshold for three distinct procedural reasons. First, he has not satisfied the requirement that he show due diligence when seeking such extraordinary relief. "It is well settled that a showing of diligence is prerequisite to the availability of relief by motion for *coram nobis*" (*People v. Shorts* (1948) 32 Cal.2d 502, 512 [197 P.2d 330]; see *People v. Carty* (2003) 110 Cal.App.4th 1518, 1528 [2 Cal.Rptr.3d 851]), and the burden falls to defendant "to explain and justify the delay" (*People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1618 [44 Cal.Rptr.2d 666]). "[W]here a defendant seeks to vacate a solemn judgment of conviction . . . the showing of diligence essential to the granting of relief by way of *coram nobis* should be no less than the similar showing required in civil cases where relief is sought against lately discovered fraud. In such cases it is necessary to

aver not only the probative facts upon which the basic claim rests, *but also the time and circumstances under which the facts were discovered*, in order that the court can determine as a matter of law whether the litigant proceeded with due diligence; a mere allegation of the ultimate facts, or of the legal conclusion of diligence, is insufficient." (*Shorts*, at p. 513, italics added; see also *People v. Shipman, supra*, 62 Cal.2d at p. 230 [defendant " 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ' "].)

This diligence requirement is analogous to that which we apply to petitions for writs of habeas corpus, where we require a petitioner to set forth with specificity when the "petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim." (*In re Robbins* (1998) 18 Cal.4th 770, 780 [77 Cal.Rptr.2d 153, 959 P.2d 311].) Indeed, we previously have recognized that petitions for writs of habeas corpus and error *coram nobis* are essentially identical in this regard. (*In re Clark* (1993) 5 Cal.4th 750, 779 [21 Cal.Rptr.2d 509, 855 P.2d 729] ["a habeas corpus petitioner, like a petitioner who mounts a collateral attack by petition for writ of [error] *coram nobis*," must allege facts showing due diligence].)

■ The diligence requirement is not some abstract technical obstacle placed randomly before litigants seeking relief, but instead reflects the balance between the state's interest in the finality of decided cases and its interest in providing a reasonable avenue of relief for those whose rights have allegedly been violated. "[I]t is *the trial* that is the main arena for determining the guilt or innocence of an accused defendant . . . . At trial, a defendant is afforded counsel and a panoply of procedural protections, including state-funded investigation expenses, in order to ensure that the trial proceedings provide a fair and full opportunity to assess the truth of the charges against the defendant and the appropriate punishment. Further, . . . [i]t is *the appeal* that provides the basic and primary means for raising challenges to the fairness of the trial." (*In re Robbins, supra*, 18 Cal.4th at p. 777.) Thus, although *coram nobis* exists as a possible remedy in cases where this system breaks down, the availability of that extraordinary remedy, like habeas corpus, "properly must be tempered by the necessity of giving due consideration to the interest of the public in the orderly and reasonably prompt implementation of its laws and to the important public interest in the finality of judgments." (*Id.* at p. 778.) Nor is the diligence requirement for *coram nobis* unique, for in addition to habeas corpus petitions, we require diligence for other types of collateral attacks on the validity of a plea. (See, e.g., *People v. Superior Court (Zamudio), supra*, 23 Cal.4th at pp. 203–207

[diligence requirement for a motion to vacate a plea under § 1016.5]; *People v. Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861] [defendant's complaint that he was not advised of the collateral consequences of his plea requires a timely objection].)

In this case, defendant—who presumably knew he was not a citizen—entered his plea in April 1997 and initialed the statement stating he understood his plea "could result in deportation, exclusion from admission to this country, and/or denial of naturalization." The INS first moved to deport him in December 1998, filing a notice to appear. Upon his parole from state prison in February 1999, he was immediately detained by federal immigration authorities. Although he was involved in the state and federal judicial systems and was represented by counsel throughout this time, he did not file his petition for a writ of error *coram nobis* or move to vacate his plea until July 2005, almost seven years after the INS first attempted to deport him. (See *People v. Trantow* (1986) 178 Cal.App.3d 842, 847 [224 Cal.Rptr. 70] [filing a petition for a writ of error *coram nobis* eight years after filing a habeas corpus petition and 14 years after conviction constitutes inexcusable delay].)

Further undermining his claims, defendant fails to allege with specificity when he learned the facts forming the basis of his petition. He declared in an affidavit accompanying his petition that (1) he is concerned he would be forced to serve in the South Korean military if deported; (2) that he may be punished for refusing on religious grounds; (3) that he was not aware at the time he entered his plea that he was admitting a deportable offense; and (4) that had he known he had the option of pleading to a different, nondeportable offense, "I would have worked with my attorney to bring it to the attention of the court in negotiating an equivalent plea and sentence that [would have] avoided my deportation." But nowhere does he allege *when* he learned these facts.

Counsel himself declared that at the time of the plea he was "unaware" the plea would render defendant deportable, although he does not speak to whether he failed to investigate. He further declares that, had he been aware an alternative plea to burglary in the language of the statute would have avoided deportation, "I believe there is a reasonable probability the prosecution and court would have been willing to agree to this plea." Although counsel mentions he subsequently became aware of the immigration consequences defendant faces, he does not declare *when* he learned of these facts.

In sum, with regard to the allegedly new facts on which defendant relies for his petition for the writ of error *coram nobis*, he fails to allege with

specificity "the time and circumstances under which the facts were discovered" so as to permit this court to "determine as a matter of law whether [defendant] proceeded with due diligence." (*People v. Shorts, supra,* 32 Cal.2d at p. 513.)

■ Defendant's claim fails for a second procedural reason: he failed to avail himself of other remedies when he had the chance. "The maxim, 'for every wrong there is a remedy' (Civ. Code, sec. 3523) is not to be regarded as affording a second remedy to a party who has lost the remedy provided by law through failing to invoke it in time—even though such failure accrued without fault or negligence on his part." (*People v. Reid, supra,* 195 Cal. at p. 260; see also *Mendez v. Superior Court* (2001) 87 Cal.App.4th 791, 798 [104 Cal.Rptr.2d 839] [quoting *Reid* with approval].)[12] This procedural requirement is analogous to the general rule applicable to writs of habeas corpus "that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." (*In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513].) In the instant case, defendant could have petitioned for a writ of habeas corpus while he was still in actual or constructive state custody, that is, in prison or on parole.

Defendant argues that neither of these procedural bars (delay and other remedies) precludes his entitlement to relief, but his arguments are unpersuasive. The INS first moved to deport defendant by filing a notice to appear in December 1998 while he was still in prison and thus in actual custody. At this time defendant could have sought to vacate his plea or otherwise invalidate his conviction by way of a petition for a writ of habeas corpus. Although defendant asserts the basis of the 1998 notice to appear was merely the length of his sentence and *not* his plea, so that he could not have sought to vacate the plea, he is mistaken. The 1998 INS filing against him was based on his status as an "aggravated felon," i.e., that he was an "alien who is convicted of an aggravated felony at any time after admission." (8 U.S.C.

---

[12] The federal courts apparently follow a different rule. (*United States v. Morgan* (1954) 346 U.S. 502, 510–511 [98 L.Ed. 248, 74 S.Ct. 247] [rejecting the claim that a prisoner should be prohibited from proceeding on *coram nobis* because he could previously have filed a petition for a writ of habeas corpus in federal court]; *U.S. v. Kwan* (9th Cir. 2005) 407 F.3d 1005, 1012 [availability of other remedies is not a bar to *coram nobis* so long as petitioner shows he had a valid reason for the delay].) But these decisions are linked to the purpose of the federal habeas corpus statute (28 U.S.C. § 2255; see *Morgan,* at pp. 510–511 [discussing the purpose of § 2255]) and do not address our state writ practice or the purpose of our state procedural bar, which has been a part of the law of *coram nobis* since at least 1924. (*People v. Reid, supra,* 195 Cal. at p. 260.) Accordingly, we do not find these federal authorities persuasive.

§ 1227(a)(2)(A)(iii).) Thus, the 1998 notice to appear informed him he was deportable because (1) he had been *convicted* (2) of a theft offense for which the term of imprisonment was at least one year, i.e., an aggravated felony. (8 U.S.C. § 1101(a)(43)(G).) That defendant's conviction was achieved by a guilty plea rather than a jury trial is irrelevant; the critical fact was his conviction of the type of offense authorizing deportation. Thus, it cannot be said he was not fairly on notice in 1998 that the INS intended to deport him based on his conviction for the Costco crimes. (Compare *People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1312–1313 & fn. 2 [68 Cal.Rptr.2d 786] [defendant placed on notice of adverse immigration consequences when, four years after his plea, the INS brought permanent deportation charges against him][13] with *People v. Totari* (2003) 111 Cal.App.4th 1202, 1209 [4 Cal.Rptr.3d 613] [defendant had no notice INS would deport him based on his criminal convictions when the initial deportation proceedings were based on his alleged violation of his student visa, not his convictions].) Although he asserts "[h]e was *never* sleeping on his rights," his assertion is belied by the record, for nearly seven years passed after the INS's first action against him—based on his conviction for an aggravated felony—before he filed his petition for a writ of error *coram nobis* in the trial court and sought to vacate his plea in the Costco crimes.

Defendant next claims he was not placed on notice he could actually be deported until 2004, when the BIA reversed the immigration judge's grant of his motion for cancellation of removal. (8 U.S.C. § 1229b(a).) Although the BIA's action made his removal more likely, to conclude this ruling constituted the very first time defendant learned he could actually be deported is unreasonable. The INS's December 1998 notice to appear notified defendant not merely of the *potential* adverse immigration consequences of his guilty plea to felony petty theft with a prior, but of the *actual* consequences. (Cf. *People v. Superior Court (Zamudio)*, *supra*, 23 Cal.4th at p. 204 [addressing § 1016.5].)

 Even were we to assume defendant first learned the facts underlying his *coram nobis* petition sometime around 2003 (when he first began challenging his state convictions), the petition is procedurally defective for a third reason: defendant has engaged in the piecemeal presentation of claims. Defendant maintains he has at all times taken a "[]holistic" view of his immigration predicament, following a strategy that prioritized his legal challenges to attack first the most serious of the various bases for his removal from the country, and that he should not be penalized for "proceed[ing] in a logical progression to deal with the worst threat first." However prudent or efficacious defendant and his legal representatives may have believed this

---

[13] *Gontiz* was disapproved on another ground in *People v. Superior Court (Zamudio)*, *supra*, 23 Cal.4th at page 200, footnote 8.

strategy to be, a litigant seeking extraordinary relief from a final judgment is not entitled to bring his legal claims to court seriatim. The analogy to habeas corpus is again apt; for relief on habeas corpus, it has long been the rule that "piecemeal presentation of known claims" is prohibited. (*In re Clark, supra*, 5 Cal.4th at p. 777; see also *In re Horowitz* (1949) 33 Cal.2d 534, 547 [203 P.2d 513] [a habeas corpus petitioner " 'cannot be allowed to present his reasons against the validity of the judgment against him piecemeal by successive proceedings for the same general purpose' "]; *In re Connor* (1940) 16 Cal.2d 701, 705 [108 P.2d 10] ["a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him"].) As with petitions for writs of habeas corpus, one seeking relief via *coram nobis* may not attack a final judgment in piecemeal fashion, in proceedings filed seriatim, in the hopes of finally convincing a court to issue the writ. Although defendant contends he has not violated this rule, his 2005 motion in the trial court to vacate his guilty plea (and hence his conviction) for the Costco crimes frankly concedes the motion was based "on the same grounds that all parties acknowledged in 2003" in support of his successful motion for resentencing in the same case. If defendant knew of these grounds in 2003, he was not entitled to reraise them in 2005.

■ Defendant claims the People's failure, in 2003, to contest his request for resentencing to an aggregate 364 days for the Costco crimes and the toolshed burglary necessarily conceded for all purposes that he has proceeded with diligence. But the prosecutor's equivocal statements at that 2003 hearing ("No. I just want to say we're not opposing it. That's as far into it as I want to get.") cannot fairly be read as a concession that defendant's subsequent petition for a writ of error *coram nobis*, filed two years later, was timely. Nor, as defendant claims, did the People forfeit the timeliness objection by failing to raise the issue below. As the party moving the court to issue the writ, defendant, not the People, had the burden of producing evidence. (*People v. Totari, supra*, 111 Cal.App.4th at p. 1206.) Moreover, in opposing both the habeas corpus and the *coram nobis* writ petitions below, the People specifically argued that defendant "has failed to prove diligence."

In sum, defendant's petition for a writ of error *coram nobis* is procedurally defective. The petition was not diligently filed, defendant failed to avail himself of the adequate legal remedy of habeas corpus, and the petition is successive and improperly raises claims piecemeal.

b. *The merits of the claim*

Even were we to overlook the procedural flaws in defendant's application for a writ of error *coram nobis*, we would conclude he has not demonstrated that facts existed at the time of his plea that satisfy the strict requirements for

this extraordinary type of collateral relief from a final judgment. Specifically, he has not shown " 'that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' " (*People v. Shipman, supra*, 62 Cal.2d at p. 230.)

As noted, defendant asserts as allegedly new facts that (1) he would be deported because his 1997 plea to petty theft with a prior theft-related conviction was his second conviction of a crime of moral turpitude "even without a sentence of one year in custody" (underscoring omitted); (2) if deported, he would be obligated to serve in the South Korean military and, on refusing such service on religious grounds, he would be imprisoned there; (3) his trial attorney was constitutionally ineffective for failing to investigate the immigration consequences of the plea; and (4) his attorney was ineffective for failing to negotiate an alternative plea to a nondeportable offense.

None of these alleged new facts supports issuance of a writ of error *coram nobis*. To qualify for issuance of the writ, the alleged facts must be such that " 'if presented would have prevented the rendition of the judgment.' " (*People v. Shipman, supra*, 62 Cal.2d at p. 230.) As noted, *ante*, facts that have justified issuance of the writ in the past have included a litigant's insanity or minority, that the litigant had never been properly served, and that a defendant's plea was procured through extrinsic fraud or mob violence. (*People v. Reid, supra*, 195 Cal. at pp. 258–259.) Defendant's alleged new facts, in contrast, speak merely to the *legal effect* of his guilty plea and thus are not grounds for relief on *coram nobis*. (*People v. Banks, supra*, 53 Cal.2d at p. 378 [*coram nobis* is unavailable where a defendant, "with knowledge of the facts," pleads guilty "because of ignorance or mistake as to the legal effect of those facts"]; see also *People v. McElwee, supra*, 128 Cal.App.4th at p. 1352 [defendant's belief, at the time of his plea, that he would serve only 15 years in prison "was not a mistake of fact but one of law"]; *People v. Ibanez, supra*, 76 Cal.App.4th at p. 546 ["Defendant's ignorance regarding the potential for civil commitment under the SVPA [as a result of his plea] is a legal, not a factual, question."].)[14]

 Defendant's allegations that he would not have pleaded guilty had he been armed with these additional facts, or that counsel would have been successful in arranging a plea to a nondeportable offense had these facts been

---

[14] Defendant was in fact warned about the *possibility* of deportation prior to entering his plea, and knowledge that the INS would *actually* seek to remove him from the country as a result of his conviction is not a "new" fact for purposes of *coram nobis* review. The INS's decision to deport him speaks only to the relative risk of deportation, not the fact of deportation itself. (Cf. *People v. Castaneda, supra*, 37 Cal.App.4th at p. 1619 [addressing § 1016.5].)

known, fundamentally misapprehends the pertinent inquiry. To qualify as the basis for relief on *coram nobis*, newly discovered facts must establish a basic flaw that would have prevented rendition of the judgment. (*People v. Shipman, supra,* 62 Cal.2d at p. 230; see *People v. Trantow, supra,* 178 Cal.App.3d at p. 845 [defendant's ignorance that her alien status might result in deportation would not have "prevented" the judgment].) Such facts often go to the legal competence of witnesses or litigants, or the jurisdiction of the court. New facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment.

In arguing to the contrary, defendant relies heavily on *People v. Wiedersperg* (1975) 44 Cal.App.3d 550 [118 Cal.Rptr. 755], but that decision cannot bear the weight of his argument. In that case, an Austrian national was charged with having committed a minor drug offense. He submitted the case on the preliminary hearing transcript, was convicted, and served his probation. Later, he successfully convinced the trial court to expunge the conviction. He was thereafter deported but filed a petition for a writ of error *coram nobis* seeking to vacate his conviction on the ground that at the time of his plea no one knew he was an alien. The trial court denied the *coram nobis* petition on the ground the court lacked jurisdiction because the conviction had already been expunged. (*Id.* at p. 553.) The appellate court disagreed on the jurisdictional point and remanded, opining that the trial court, "in its discretion and if the proof is sufficient, could grant the relief sought." (*Id.* at p. 555.)

In so holding, the *Wiedersperg* court suggested that the defendant's allegations described errors of fact, not of law. (*People v. Wiedersperg, supra,* 44 Cal.App.3d at pp. 554–555; accord, *In re Azurin* (2001) 87 Cal.App.4th 20, 27, fn. 7 [104 Cal.Rptr.2d 284] [stating the denial of habeas corpus relief to an out-of-custody defendant was without prejudice to "filing a petition for error *coram nobis* in the superior court," citing *Wiedersperg*].) Defendant asserts: "*Wiedersperg* remains a principled and analytically sound example of when *coram nobis* relief is warranted."

We disagree. The *Wiedersperg* court never explains why it considered allegations of alienage an error of fact and not of law, nor why such an allegedly unknown fact would have prevented rendition of the judgment. (*People v. Shipman, supra,* 62 Cal.2d at p. 230.) Later courts have found the opinion unpersuasive. As the Court of Appeal explained in *People v. Soriano, supra,* 194 Cal.App.3d at page 1475, the decision of the *Wiedersperg* court "was an extremely limited one. It found only that the trial court to whom the writ was directed had erred in finding it had no jurisdiction to consider the petition, and that [the petitioner] had stated facts which, if they could be

proven, would permit issuance of the writ in the discretion of the trial court." (See also *People v. Ibanez, supra,* 76 Cal.App.4th at p. 547 [making the same point].) In any event, as the *Soriano* court observed, because the trial court in *Wiedersperg* did not advise the defendant on the record of the possible immigration consequences of his plea, *Wiedersperg* has effectively been superseded by the enactment of section 1016.5, which created a statutory basis for a motion to vacate and to withdraw a guilty plea entered under such circumstances.[15] Because a statutory remedy is now available for the situation posed in *Wiedersperg, coram nobis* cannot lie. (*Mendez v. Superior Court, supra,* 87 Cal.App.4th at p. 798.)

 Finally, with regard to defendant's claims that his counsel was constitutionally ineffective for failing to investigate and for failing to negotiate a different plea, we conclude neither allegation states a case for relief on *coram nobis.* That a claim of ineffective assistance of counsel, which relates more to a mistake of law than of fact, is an inappropriate ground for relief on *coram nobis* has long been the rule. (*People v. Soriano, supra,* 194 Cal.App.3d at p. 1477; *In re Nunez, supra,* 62 Cal.2d at p. 236; *People v. Buggs* (1969) 272 Cal.App.2d 285, 289 [77 Cal.Rptr. 450].) Although an attorney has a constitutional duty at least not to affirmatively *misadvise* his or her client as to the immigration consequences of a plea (*In re Resendiz* (2001) 25 Cal.4th 230, 235, 240 [105 Cal.Rptr.2d 431, 19 P.3d 1171] (plur. opn. of Werdegar, J.); *id.* at p. 255 (conc. & dis. opn. of Mosk, J.)), any violation in this regard should be raised in a motion for a new trial or in a petition for a writ of habeas corpus. (See, e.g., *People v. Bautista* (2004) 115 Cal.App.4th 229 [8 Cal.Rptr.3d 862] [issuing order to show cause on habeas corpus].) Nor does defendant in any event assert he was misadvised.

### 3. *Proposed Expansion of* Coram Nobis

Perhaps recognizing that his case falls outside the traditionally narrow limits of the writ of error *coram nobis* as that remedy has been defined in California, defendant joined by amici curiae contends we should modify our *coram nobis* procedure to make it consistent with what he terms the "vast majority of all U.S. jurisdictions." He characterizes *coram nobis* jurisprudence in this state as "incoherent" and a "deformed and hobbled creature,"

---

[15] Subdivision (b) of section 1016.5 provides in pertinent part: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

and insists some form of postconviction remedy is necessary to ameliorate the harshness of the situation in which fundamental constitutional violations have occurred but will go unremedied because the offender is now out of custody and unable to seek relief on habeas corpus.[16]

That other jurisdictions (see, e.g., *Skok v. State* (2000) 361 Md. 52 [760 A.2d 647]; *U.S. v. Kwan, supra*, 407 F.3d 1005) may have broadened the grounds for *coram nobis* so that it resembles a generalized postconviction remedy available to persons no longer in custody may be true, but for several reasons we are unconvinced a similar change is appropriate in this state. First, the weight of authority in this state holds that the writ of error *coram nobis* " 'is not broad enough to reach every case in which there has been an erroneous or unjust judgment on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial and were unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment.' " (*In re Lindley, supra*, 29 Cal.2d at pp. 725–726; see also *People v. Hayman, supra*, 145 Cal.App.2d at p. 623 [*coram nobis* is a limited remedy]; *People v. Martinez, supra*, 88 Cal.App.2d at p. 774 [same].)

Second, criminal defendants have ample opportunities to challenge the correctness of the judgments against them. They are of course provided attorneys to defend them and are guaranteed the right to a jury trial. Following a plea or conviction, a defendant can move to withdraw a plea,[17]

---

[16] Defendant and amici curiae place much reliance on *United States v. Morgan, supra*, 346 U.S. 502, contending it represents the modern trend of broadening the scope of *coram nobis*. The petitioner in *Morgan* was no longer in custody on a prior conviction, but sought relief on *coram nobis* (claiming he had been denied counsel) when that prior conviction was alleged as the basis of a sentence enhancement in a prosecution for a new New York State offense. The high court held *coram nobis* was an available remedy under the "all writs" section of the Judiciary Act of 1789 (28 U.S.C. § 1651), explaining the constitutional right of which the petitioner allegedly was deprived was fundamental in nature. "Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties [and] civil rights may be affected." (*Morgan*, at pp. 512–513.)

The continuing efficacy of *Morgan*'s holding is in doubt, however, for more recently the high court has reiterated the limited nature of the writ of error *coram nobis*. "[I]t was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." (*Carlisle v. United States* (1996) 517 U.S. 416, 429 [134 L.Ed.2d 613, 116 S.Ct. 1460].) Moreover, although the petitioner in *Carlisle*, as in *Morgan*, argued the writ of error *coram nobis* was available under title 28 United States Code section 1651, the high court explained that with the advent of the modern Federal Rules of Criminal Procedure, " 'it is difficult to conceive of a situation in a federal criminal case today where [a writ of error *coram nobis*] would be necessary or appropriate' " (*Carlisle*, at p. 429).

[17] Section 1018 provides in pertinent part: "On application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of

or can appeal a judgment of conviction and then if necessary seek discretionary review in this court. Having exhausted those avenues of potential relief, the defendant during the time of actual or constructive custody can file a petition for a writ of habeas corpus in an appropriate court.[18] Following completion of probation, an offender may in some circumstances petition the trial court to withdraw a guilty plea and enter a not guilty plea or set aside a verdict of guilty and have the matter dismissed. (§ 1203.4.) One convicted of a crime can also seek a pardon from the Governor. (*Mendez v. Superior Court, supra,* 87 Cal.App.4th at p. 803.) In short, criminal defendants do not lack reasonable opportunities to vindicate their constitutional rights or otherwise correct legal errors infecting their judgments.

Third, when these established remedies have proved inadequate, the Legislature has enacted statutory remedies to fill the void. For example, a criminal defendant, even if no longer in custody, can now move to withdraw a guilty plea if the trial court accepting the plea failed to admonish the accused of the immigration consequences of the plea. (§ 1016.5.) Similarly, defendants convicted in part by the false testimony of government agents may, even if no longer in custody, move to vacate the judgment. (§ 1473.6; see *People v. Germany* (2005) 133 Cal.App.4th 784, 791 [35 Cal.Rptr.3d 110] [statute responded to a scandal in Los Angeles County in which police officers falsified reports, planted evidence, and committed perjury].) And because certain misdemeanor convictions related to domestic violence might affect one's right to own or carry a firearm under federal law, the Legislature, in enacting section 12021, subdivision (c)(2), has created a statutory remedy to permit peace officers to expunge such convictions and avoid the federal firearm ban.[19]

---

judgment is suspended, the court may, and in case of a defendant who appeared without counsel at the time of the plea the court shall, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted."

[18] The People argue that by enacting statutes implementing the habeas corpus remedy, the Legislature has occupied the field, thereby undermining this court's ability to expand the *coram nobis* remedy. In support, they request that we take judicial notice of the legislative history of section 1473, which sets forth a nonexclusive list of grounds for authorizing issuance of a writ of habeas corpus. The People also argue that expanding the *coram nobis* remedy as defendant requests would "open the floodgates" because over 19,000 inmates (about 11 percent) were subject to an INS hold. In support, the People request that we take judicial notice of certain statistics compiled by the Data Analysis Unit of the California Department of Corrections and Rehabilitation. Because it is unnecessary to address these arguments, the requested legislative and agency materials are superfluous. Accordingly, we deny the requests for judicial notice. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29 [79 Cal.Rptr.3d 489].)

[19] We take judicial notice, as requested by amici curiae California Rifle and Pistol Association and the Law Enforcement Alliance of America, of an information bulletin by the California Attorney General informing state criminal justice agencies that the federal Bureau of Alcohol, Tobacco, Firearms and Explosives does not recognize an expungement under Penal

As the foregoing examples indicate, the Legislature has been active in providing statutory remedies when the existing remedies such as habeas corpus have proven ineffective. Section 1016.5 especially shows the Legislature's concern that those who plead guilty or no contest to criminal charges are aware of the immigration consequences of their pleas. Because the Legislature remains free to enact further statutory remedies for those in defendant's position, we are disinclined to reinterpret the historic writ of error *coram nobis* to provide the remedy he seeks. Indeed, by specifying in which court a person should file a petition for a writ of error *coram nobis* (§ 1265), the Legislature has impliedly recognized the existence of the common law writ and can modify it should it so desire.

Finally, expanding *coram nobis* to create a generalized common law postconviction, postcustody remedy would accord insufficient deference to a final judgment. We have addressed the importance of finality for the analogous remedy of habeas corpus, explaining: "Generally, of course, habeas corpus claims must surmount the presumption of correctness we accord criminal judgments rendered after procedurally fair trials. ' "For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." ' " (*In re Lawley* (2008) 42 Cal.4th 1231, 1240 [74 Cal.Rptr.3d 92, 179 P.3d 891].) Moreover, we reject defendant's argument that the interest in the finality of judgments predominates only if the judgment is just and error free. " 'Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice.' " (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 11 [74 Cal.Rptr.2d 248, 954 P.2d 511] [declining, in a civil case, to create a new tort for spoliation of evidence despite evidence of fraud and destruction of evidence].)

For the above stated reasons, we decline defendant's invitation to expand the historic boundaries of the writ of error *coram nobis*. In light of this conclusion, we express no opinion as to whether the trial court possessed the inherent power to do so.[20]

---

Code section 12021, subdivision (c) and continues to prohibit persons with qualifying convictions from owning or possessing firearms. (Evid. Code, § 452, subd. (c) [official acts of the executive branch are subject to judicial notice].) We also take judicial notice, as amici curiae request, of a petition for a writ of error *coram nobis* in a Los Angeles County Superior Court action in which a police officer seeks to restore his right to own and possess firearms by vacating his plea in 1993 to misdemeanor spousal abuse, a violation of Penal Code section 273.5. (Evid. Code, § 452, subd. (d) [court records are subject to judicial notice].)

[20] We also reject defendant's contention that in light of the Legislature's enactment of section 1016.5, which necessarily reflects that body's assessment of the need for a remedy when pleading defendants are unaware of the immigration consequences of their pleas, we should

### B. *Availability of Habeas Corpus Relief*

 Finally, defendant argues he is entitled to relief via a writ of habeas corpus. Although he did not file a petition for a writ of habeas corpus in the trial court, he contends he should be excused from doing so because not until *People v. Villa, supra,* 45 Cal.4th 1063, was filed in the Court of Appeal did case law authorize a habeas corpus petition by a person in out-of-state custody. But the petitioner in *Villa* alleged he was currently in ICE custody, whereas defendant here is apparently free on bail from ICE custody. Even were we to assume such bail status could constitute a form of constructive custody for habeas corpus purposes, as explained in *Villa* and contrary to the Court of Appeal, persons like defendant, who have completely served their sentence and also completed their probation or parole period, may not challenge their underlying conviction in a petition for a writ of habeas corpus because they are in neither actual nor constructive custody for state habeas corpus purposes. Accordingly, we reject this claim as well.

### III. CONCLUSION

 The United States Congress has plenary power over matters of immigration and naturalization (U.S. Const., art. I, § 8, cl. 4), including deportation, and judicial power regarding immigration and naturalization is extremely limited (*Fiallo v. Bell* (1977) 430 U.S. 787, 792 [52 L.Ed.2d 50, 97 S.Ct. 1473]). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." (*Mathews v. Diaz* (1976) 426 U.S. 67, 79–80 [48 L.Ed.2d 478, 96 S.Ct. 1883].) Because of federal immigration laws concerning the commission of certain types of crimes by resident aliens, defendant is facing the possibly permanent separation from his family, his friends, and the only home he has ever known. But despite this harsh consequence flowing from his 1997 conviction for petty theft with a prior theft-related conviction (following his conviction for the toolshed burglary in 1996), we conclude that at this late date, he is procedurally barred from obtaining relief by way of *coram nobis* because his presentation of claims is untimely, he had other legal remedies, and he presented his legal claims piecemeal. We also conclude that

---

expand the scope of that statutory motion to vacate to provide some form of relief for defendant here. We note the trial court properly admonished defendant regarding the possible immigration consequences of his plea, and his further claim that his trial attorney was somehow ineffective is not a wrong encompassed by the statute. (See *People v. Chien* (2008) 159 Cal.App.4th 1283 [72 Cal.Rptr.3d 448] [ineffectiveness of counsel claim is not cognizable in a motion to vacate under § 1016.5].)

defendant has not stated a case for relief on the merits because he alleges no mistake of fact which, had it been known at the time of his plea, would have prevented rendition of the judgment. Accordingly, the trial court abused its discretion in granting relief. Because the Court of Appeal below correctly reversed the trial court's decision to issue a writ of error *coram nobis*, we affirm the judgment.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.