Filed 2/11/14  P. v. Linares CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EFRAIN LINARES,<br><br>    Defendant and Appellant. | D063625<br><br><br><br>(Super. Ct. No. SCN196437) |

APPEAL from an order of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Kobayashi Law Office and H. Lisa Kobayashi for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Andrew Mestman and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Efrain Linares appeals an order denying his motion to withdraw his guilty plea to one count of possession for sale of a controlled substance (Health & Saf. Code, § 11378). He pleaded guilty to that count in 2005, successfully completed three years of formal

probation, and the information underlying his conviction was dismissed pursuant to Penal Code section 1203.4 in 2010. However, on learning that dismissal had no effect on the immigration consequences of his conviction, Linares filed the instant motion to withdraw his guilty plea and vacate his conviction. The trial court denied the motion. On appeal, he contends the trial court erred by denying his motion because (1) *People v. Kim* (2009) 45 Cal.4th 1078 (*Kim*), relied on by the court, is inapplicable to his case because his counsel's affirmative misadvice on the immigration consequences of his guilty plea violated his constitutional right to effective assistance of counsel; and (2) his plea form did not show whether his counsel gave him correct advice regarding the immigration consequences of his guilty plea.

The People contend the trial court was correct that it had no jurisdiction to grant Linares's motion to withdraw his guilty plea seven years after he pleaded guilty and was no longer in custody. The six-month statutory time for filing a motion to withdraw a plea under Penal Code section 1018 had expired, he did not qualify for the common law writ of *coram nobis*, habeas corpus was not available because he was not in custody, and there is no other procedural remedy permitting withdrawal of the plea. Because we interpret *Kim* as applying to cases involving affirmative misadvice by defense counsel and no other nonstatutory motion exists to provide relief, we conclude the trial court correctly applied *Kim* to this case and affirm its order denying Linares's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

Linares is a citizen of Mexico and came with his mother to the United States when he was nine years old. He graduated from high school and has worked to support himself and his family. In 2009, he married the mother of their two daughters, all of whom are United States citizens.

In 2005, Linares pleaded guilty to one count of possession for sale of a controlled substance (Health & Saf. Code, § 11378). In return, the prosecution dismissed two counts charging him with transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). The trial court granted him formal probation for three years with the condition he serve 90 days in local custody. After successfully completing his probation, Linares's request for dismissal of the information underlying his conviction pursuant to Penal Code section 1203.4 (i.e., expungement of his conviction) was granted in 2010.

In 2012, Linares consulted an attorney for advice regarding becoming a permanent resident of the United States. The attorney informed him his 2005 conviction was an aggravated felony for immigration purposes and could result in his deportation, inability to reenter the United States, and denial of naturalization. In an apparent attempt to eliminate that basis for adverse immigration action, Linares filed the instant motion to withdraw his guilty plea and vacate his conviction. On January 18, 2013, the trial court denied the motion. Linares timely filed a notice of appeal. The trial court issued a certificate of probable cause for his appeal.

DISCUSSION

I

*The Writ of Error Coram Nobis*

"The writ of error *coram nobis* is a nonstatutory, common law remedy whose origins trace back to an era in England in which appeals and new trial motions were unknown. 'Far from being of constitutional origin, the "proceeding designated '*coram nobis*' . . ." . . . was contrived by the courts at an early epoch in the growth of common law procedure to provide a corrective remedy "because of the absence at that time of the right to move for a new trial and the right of appeal from the judgment." ' [Citation.] The grounds on which a litigant may obtain relief via a writ of error *coram nobis* are narrower than on habeas corpus [citation]; the writ's purpose 'is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court' [citation]." (*Kim*, *supra*, 45 Cal.4th at p. 1091, fn. omitted.)

" ' "The writ of error *coram nobis* is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment*; and which without fault or negligence of the party, was not presented to the court." ' " (*Kim*, *supra*, 45 Cal.4th at p. 1092.) The historical purpose of the writ of error *coram nobis* was to bring the attention of the court to, and obtain relief for, errors of fact,

such as the death of a party before judgment, an infant not properly represented by a guardian, insanity of a party or some other common-law disability, or a valid defense based on the facts not made on behalf of the defendant through duress or extrinsic fraud or excusable mistake not shown on the record; and that if such facts were known, would have prevented the rendition and entry of the judgment. (*Id*. at pp. 1092, 1094.) "With the advent of statutory new trial motions, the availability of direct appeal, and the expansion of the scope of the writ of habeas corpus, writs of error *coram nobis* had, by the 1930's, become a remedy 'practically obsolete . . . except in the most rare of instances' [citation] and applicable to only a 'very limited class of cases' [citation]." (*Id*. at p. 1092.)

The modern requirements for obtaining a writ of error *coram nobis* are set forth in *People v. Shipman* (1965) 62 Cal.2d 226, in which the court stated:

> "The writ of [error] *coram nobis* is granted only when three requirements are met. (1) Petitioner must 'show that some fact existed which, without fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment.' [Citations.] (2) Petitioner must also show that the 'newly discovered evidence . . . [does not go] to the merits of issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial.' [Citations.] This second requirement applies even though the evidence in question is not discovered until after the time for moving for a new trial has elapsed or the motion has been denied. [Citations.] (3) Petitioner 'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his [petition] for the writ. . . .' [Citations.]
>
> "In view of these strict requirements, it will often be readily apparent from the petition and the court's own records that a petition for

5

*coram nobis* is without merit and should therefore be summarily denied." (*People v. Shipman, supra,* 62 Cal.2d at p. 230.)

The three *Shipman* requirements continue to apply to petitions for writ of error *coram nobis* filed today. (*Kim, supra,* 45 Cal.4th at p. 1093; *People v. McElwee* (2005) 128 Cal.App.4th 1348, 1352.)

"Because the writ of error *coram nobis* applies where *a fact* unknown to the parties and the court existed at the time of judgment that, if known, would have prevented rendition of the judgment, '[t]he remedy does not lie to enable the court to correct errors of law.' [Citations.] . . . [¶] For a newly discovered fact to qualify as the basis for the writ of error *coram nobis,* we look to the fact itself and not its legal effect. 'It has often been held that the motion or writ is not available where a defendant voluntarily and with knowledge of the facts pleaded guilty or admitted alleged prior convictions because of ignorance or mistake as to the legal effect of those facts.' [Citation.] [¶] Finally, the writ of error *coram nobis* is unavailable when a litigant has some other remedy at law. 'A writ of [error] *coram nobis* is not available where the defendant had a remedy by (a) appeal or (b) motion for new trial and failed to avail himself of such remedies.' " (*Kim, supra,* 45 Cal.4th at p. 1093.)

The writ of error *coram nobis* has been found unavailable in cases in which the defendant mistakenly believed his or her guilty plea to second degree murder meant the defendant would serve no more than 15 years in prison (*People v. McElwee, supra,* 128 Cal.App.4th at p. 1352 [defendant's belief was "not a mistake of fact but one of law"]) and the defendant asserted neither his or her counsel nor the court advised the defendant

6

before entering the guilty plea that those convictions would render the defendant eligible for civil commitment under the Sexually Violent Predators Act (SVPA) (*People v. Ibanez* (1999) 76 Cal.App.4th 537, 546 ["[d]efendant's ignorance regarding the potential for civil commitment under the SVPA is a legal, not a factual, question"]).  "Likewise[,] any number of constitutional claims cannot be vindicated on *coram nobis*.  (See, e.g., *People v. Howard* [(1965) 62 Cal.2d 237,] 238 [claim of an unconstitutional sentence and inadequate representation]; *People v. Blalock* [(1960) 53 Cal.2d 798,] 801 [double jeopardy]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1477 [240 Cal.Rptr. 328] [ineffective assistance of counsel] [citations].)"  (*Kim*, *supra*, 45 Cal.4th at p. 1095.)

A trial court's decision whether to issue a writ of error *coram nobis* is reviewed on appeal under the abuse of discretion standard.  (*Kim*, *supra*, 45 Cal.4th at p. 1095; *People v. McElwee*, *supra*, 128 Cal.App.4th at p. 1352; *People v. Ibanez*, *supra*, 76 Cal.App.4th at p. 544.)

II

*Application of Kim's Holding to This Case*

Linares contends the trial court erred by denying his motion to withdraw his guilty plea because *Kim*, *supra*, 45 Cal.4th 1078, on which the court relied, is inapplicable to his case because his counsel's affirmative misadvice on the immigration consequences of his guilty plea violated his constitutional right to effective assistance of counsel.  He also argues the court should have granted his motion to withdraw his guilty plea as a nonstatutory motion other than for a writ of error *coram nobis*.

7

A

In November 2012, Linares filed a motion to withdraw his guilty plea and vacate his 2005 conviction for a Health and Safety Code section 11378 offense. He argued he was denied his Sixth Amendment right to effective assistance of counsel when his defense counsel gave him affirmative misadvice that his guilty plea could later be withdrawn under Penal Code section 1203.4, and he would thereafter suffer no adverse immigration consequences. Citing *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), Linares argued that under the Sixth Amendment defense counsel has a duty to correctly advise a client of any clear adverse immigration consequences of a guilty plea (e.g., removal or deportation). Linares argued he was denied his Sixth Amendment right to effective assistance of counsel when his defense counsel advised him to plead guilty to an aggravated felony and, in so doing, wrongly advised him that he would not have any immigration problems after expungement of that conviction.

In his declaration in support of his motion, Linares stated in part:

> "6. In court on July 5, 2005, [defense counsel] told me that I should take a plea deal in which I would plead guilty to only one of the three charges, and I would be able to be on probation. I told him that I was worried about immigration problems, but he told me that everything would be fine, and I could later get my conviction expunged. . . .
>
> "7. At the [time] I entered my plea to the one charge that [defense counsel] recommended, I had no idea that I could be deported because of the plea. . . .
>
> "8. I followed all the requirements of my probation, paid all my fines, and complied with all the terms of my sentence. As soon as I was able, I engaged [defense counsel] to get my conviction

8

expunged. My request for expungement was granted on February 19, 2010, and I believed that everything would be fine and I could become a U.S. citizen one day. [¶] . . . [¶]

"11. The first time I became aware that I could be deported was when I contacted attorney Lisa Kobayashi in August 2012, to see if I could begin the process of becoming a U.S. citizen.

"12. After talking with attorney Kobayashi, to my surprise and horror, I learned that my conviction was an 'aggravated felony' and that, along with being deported, I would never be able to reenter the United States or become a U.S. citizen. I learned that there would be no exceptions or relief that I could apply for in immigration court that could prevent my deportation because of this criminal conviction.

"13. If I had known the near-certain devastating consequences that would result from such a conviction, I would [have] insisted that my attorney negotiate a better plea, or I would have stayed in jail until I had a trial. . . ."

In support of his motion, Linares also submitted a declaration of Lisa Kobayashi, his immigration attorney, who stated, in part, that when she interviewed Linares in or about August 2012, he "erroneously believed that the expungement eliminated the immigration consequences of his conviction." After reviewing Linares's case file and conducting research, she concluded he "had no viable defense or relief from the immigration consequences of his conviction. As such, removal (deportation), exclusion, and denial of naturalization are near certain consequences of his conviction, and if he is removed, he would not be able to return to the United States again. I advised Mr. Linares of my findings."

The prosecution opposed his motion, arguing that no nonstatutory motion (e.g., writ of error *coram nobis*) was appropriate relief for Linares's claim of ineffective

9

assistance of counsel. The prosecution argued the trial court properly denied Linares's motion to withdraw his guilty plea.

On January 18, 2012, the trial court heard arguments on the motion to withdraw his guilty plea and vacate his conviction. The court noted it had reviewed the plea form signed by Linares, his counsel, the prosecutor, and the trial court. It further noted the six-month period for a Penal Code section 1018 motion based on ineffective assistance of counsel had long expired since Linares's 2005 conviction. The court concluded *Kim* was controlling in this case. It also concluded *Padilla* did not contradict *Kim*. The court considered Linares's motion to withdraw his guilty plea to be a nonstatutory motion for ineffective assistance of counsel, which motion is "covered under the *Kim* case," and therefore it did not have jurisdiction to hear his motion. The court denied the motion.

B

*Sixth Amendment right to counsel.* In *Padilla*, the United States Supreme Court held that defense counsel has a duty under the Sixth Amendment to correctly advise his or her client regarding any clear deportation or other adverse immigration consequences of a guilty plea.[1] (*Padilla*, *supra*, 559 U.S. at pp. 368-369.) In that case, the court held Padilla had adequately alleged his defense counsel's performance was constitutionally deficient by telling him before he pleaded guilty that he did not have to worry about his

---

[1] However, when the deportation consequences of a guilty plea are unclear or uncertain, defense counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." (*Padilla*, *supra*, 559 U.S. at p. 369, fn. omitted.)

10

immigration status. (*Id*. at pp. 359, 374.) Because the immigration statute in that case was clear that removal would be a consequence for Padilla's conviction, *Padilla* held that his counsel had performed deficiently by providing him "false assurance that his conviction would not result in his removal from this country." (*Id*. at p. 368.)

In *Chaidez v. U.S.* (2013) 568 U.S. ___, 133 S.Ct. 1103, the United States Supreme Court held that its decision in *Padilla* did not apply retroactively to guilty pleas entered before *Padilla* was issued. (*Chaidez,* at pp. ___, ___, 133 S.Ct. at pp. 1105, 1113.) In that case, Chaidez's counsel failed to advise her she could be subject to deportation before she pleaded guilty to aggravated felonies. (*Id*. at p. ___, 133 S.Ct. at p. 1106.)

In this case, Linares asserts he was denied his Sixth Amendment right to effective assistance of counsel when his counsel affirmatively misadvised him that his plea of guilty to a Health and Safety Code section 11378 offense would not have any adverse immigration consequences if that conviction was later expunged. For purposes of this appeal, we assume arguendo that Linares's defense counsel performed deficiently by so misadvising him, and therefore his Sixth Amendment right to effective assistance of counsel was violated. (*Padilla*, *supra*, 559 U.S. at p. 368; see also *Chaidez v. U.S.*, *supra*, 568 U.S. ___, 133 S.Ct. at p. 1105.)

C

*Application of Kim to this case*. Linares asserts the trial court erred by concluding *Kim* controlled its disposition of his motion to withdraw his guilty plea because *Kim* did

11

not involve affirmative misadvice regarding adverse immigration consequences of a guilty plea, but involved only a failure to advise regarding those immigration consequences. Based on our reading of *Kim*, we conclude its holding applies to both types of deficient performance by defense counsel.

In *Kim*, the defendant filed a motion to vacate his conviction, seeking a writ of error *coram nobis* based on an alleged mistake of fact that no one knew his guilty plea would result in his deportation and therefore his guilty plea was not knowing, intelligent, free or voluntary. (*Kim*, *supra*, 45 Cal.4th at p. 1089.) He also filed a nonstatutory motion to vacate his conviction based on his defense counsel's failure to investigate the immigration consequences and advise him against pleading guilty to an offense that would result in his mandatory deportation. (*Kim*, *supra*, 45 Cal.4th at pp. 1089, 1096.) The trial court granted both motions. (*Id*. at p. 1090.) The Court of Appeal reversed the trial court's order. (*Id*. at p. 1091.)

In *Kim*, the California Supreme Court considered both motions together, noting "a nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis* [citations]." (*Kim*, *supra*, 45 Cal.4th at p. 1096.) After discussing the procedural bars to the defendant's claim for relief, the court addressed the merits of his motion for a writ of error *coram nobis*. (*Id*. at pp. 1101-1104.) *Kim* concluded the defendant's alleged "new facts" for such a writ "speak merely to the *legal effect* of his guilty plea and thus are not grounds for relief on *coram nobis*." (*Id*. at p. 1102.) The court explained:

"Defendant's allegations that he would not have pleaded guilty had he been armed with these additional facts, or that counsel would have been successful in arranging a plea to a nondeportable offense had these facts been known, fundamentally misapprehends the pertinent inquiry. To qualify as the basis for relief on *coram nobis*, newly discovered facts must establish a basic flaw that would have prevented rendition of the judgment. [Citations.] Such facts often go to the legal competence of witnesses or litigants, or the jurisdiction of the court. New facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment." (*Kim*, *supra*, 45 Cal.4th at pp. 1102-1103.)

The court also rejected the defendant's request for relief for ineffective assistance of counsel, stating:

"[W]ith regard to defendant's claims that his counsel was constitutionally ineffective for failing to investigate and for failing to negotiate a different plea, we conclude neither allegation states a case for relief on *coram nobis*. That a claim of ineffective assistance of counsel, which relates more to a mistake of law than of fact, is an inappropriate ground for relief on *coram nobis* has long been the rule. [Citations.] Although an attorney has a constitutional duty at least not to affirmatively *misadvise* his or her client as to the immigration consequences of a plea [citation], any violation in this regard should be raised in a motion for a new trial or in a petition for a writ of habeas corpus." (*Kim*, *supra*, 45 Cal.4th at p. 1104.)

The court rejected the defendant's suggestion that it should expand the traditional *coram nobis* procedure to allow claims such as those raised in his motion. (*Kim, supra,* 45 Cal.4th at pp. 1104-1107.) It declined to expand that procedure to resemble a generalized postconviction remedy available to persons no longer in custody to provide relief in every case in which there has been an erroneous or unjust judgment merely because no other remedy exists. (*Id*. at p. 1105.) The court noted criminal defendants

13

"have ample opportunities to challenge the correctness of the judgments against them."
(*Ibid*.)  Defendants can move to withdraw a guilty plea, appeal a judgment of conviction, file a petition for a writ of habeas corpus while in actual or constructive custody, and seek a pardon from the Governor.  (*Id*. at pp. 1105-1106.)  *Kim* stated: "In short, criminal defendants do not lack reasonable opportunities to vindicate their constitutional rights or otherwise correct legal errors infecting their judgments."  (*Id*. at p. 1106.)  To the extent those established remedies are inadequate, *Kim* noted "the Legislature has enacted statutory remedies to fill the void," citing, as examples, Penal Code sections 1016.5 and 1473.6, and former Penal Code section 12021, subdivision (c)(2).  (*Kim*, at p. 1106.)  Accordingly, *Kim* stated: "Because the Legislature remains free to enact further statutory remedies for those in defendant's position, we are disinclined to reinterpret the historic writ of error *coram nobis* to provide the remedy he seeks."  (*Id*. at p. 1107.)  The court noted the Legislature "has impliedly recognized the existence of the common law writ and can modify it should it so desire."  (*Ibid*.)  Therefore, *Kim* concluded the trial court abused its discretion in granting relief to the defendant.  (*Id*. at p. 1109.)

Based on our reading of *Kim*, we, like the trial court below, conclude that decision is dispositive of Linares's motion to withdraw his guilty plea and vacate the judgment. First, as *Kim* holds, a claim of ineffective assistance of counsel cannot be remedied by a writ of error *coram nobis* because that claim involves a mistake of law and not fact. (*Kim*, *supra*, 45 Cal.4th at p. 1103.)  Furthermore, any error in the failure to advise, or in affirmatively misadvising, a criminal defendant regarding the immigration consequences

14

of a guilty plea does not affect a court's ability or jurisdiction to render judgment. (*Id*. at p. 1103.) As Linares appears to concede, *Kim* holds that a defendant denied effective assistance of counsel in these circumstances has certain remedies, including a Penal Code section 1018 motion to withdraw, Penal Code section 1016.5 motion, motion for new trial, direct appeal, or petition for writ of habeas corpus. (*Kim,* at pp. 1093, 1103, 1105-1106; see also *People v. Shokur* (2012) 205 Cal.App.4th 1398, 1404.) Assuming arguendo that none of those remedies could provide relief to Linares in the circumstances of this case because he did not learn of his counsel's misadvice until after he was released from actual or constructive custody, *Kim* holds the traditional *coram nobis* procedure does not apply to his type of case and declines to expand that procedure to provide a generalized postconviction remedy available to persons no longer in custody to provide relief in every case in which there has been an erroneous or unjust judgment merely because no other remedy exists. (*Kim*, at p. 1105.) *Kim* held, in effect, that it is within the power of the Legislature, and not the courts, to provide a statutory remedy for those exceptional cases in which existing statutory or common law remedies are inadequate. (*Id*. at pp. 1106-1107.)

Contrary to Linares's assertion, we conclude the holding in *Kim* applies to this case even though *Kim* involved a counsel's failure to advise the defendant regarding immigration consequences and this case involves a counsel's affirmative misadvice regarding immigration consequences. In both situations, the defendant is denied effective assistance of counsel in violation of the Sixth Amendment, but nevertheless there is no

15

writ of error *coram nobis* or other nonstatutory motion that can provide a defendant with relief for such violation after he or she has been released from actual or constructive custody.

To the extent Linares asserts his motion to withdraw was not a motion for a writ of error *coram nobis* but was another type of nonstatutory motion to withdraw a guilty plea, he does not cite any case or other authority showing such a nonstatutory motion exists to provide him with relief in the circumstances of this case. In fact, *Kim* stated a motion for a writ of error *coram nobis* and a nonstatutory motion to vacate a conviction are legally equivalent and should be considered together. (*Kim*, *supra*, 45 Cal.4th at p. 1096.) Because *Kim* held that both motions could not provide relief where defense counsel failed to advise the defendant of the immigration consequences of a guilty plea, we hold there is no nonstatutory motion that can provide Linares with relief in this instance. To the extent *People v. Castaneda* (1995) 37 Cal.App.4th 1612, cited by Linares, can be read as providing such a nonstatutory remedy, we conclude it was subsequently overruled by *Kim*. Furthermore, to the extent Linares asserts *Castaneda* supports the existence of a nonstatutory motion to vacate a conviction based on fraud or other fact overreaching a defendant's free will or judgment, he does not show any such facts existed in this case. Linares does not assert there was any extrinsic fraud that made his guilty plea void. Rather, he asserts there was intrinsic fraud (i.e., misrepresentation by his counsel when he

16

gave Linares affirmative misadvice regarding the immigration consequences of his guilty plea).[2]

Those circumstances do not support a nonstatutory motion to vacate his conviction in the circumstances of this case. The historical purpose of the writ of error *coram nobis* was to obtain relief for errors of fact; for example, the loss of a valid defense because of facts not presented on behalf of the defendant because of extrinsic fraud, which if known would have prevented the rendition and entry of the judgment. (*Kim*, at pp. 1092, 1094.) As *Kim* stated, "facts that have justified issuance of the writ [of error *coram nobis*] in the past have included . . . [facts] that a defendant's plea was procured through *extrinsic* fraud . . . ." (*Id*. at p. 1102, italics added.) We conclude intrinsic fraud cannot provide a basis for a writ of *coram nobis* or other nonstatutory relief. We decline Linares's suggestion that we follow *Castaneda* instead of *Kim* and create a nonstatutory remedy allowing him to withdraw his guilty plea in the circumstances of this case.

Although Linares primarily relies on the United States Supreme Court's decisions in *Padilla* and *Chaidez* as support for his assertion that there *should* be a remedy in his case, neither decision discusses the procedures or remedies that the Sixth Amendment requires in circumstances in which defense counsel fails to advise, or affirmatively misadvises, a defendant regarding clear immigration consequences of a guilty plea. Rather, those cases hold only that failure to advise or affirmative misadvice violates a

---

[2]    Contrary to Linares's assertion, the alleged affirmative misadvice that his counsel gave him could not, as a matter of law, constitute circumstances showing his will was overcome when he pleaded guilty. Linares does not cite any case showing otherwise.

17

defendant's Sixth Amendment right to counsel. "*Padilla* does not require states to provide an avenue for noncitizens to challenge their convictions based on an erroneous immigration advisement when no other remedy is presently available." (*People v. Shokur*, *supra*, 205 Cal.App.4th at p. 1405.) Furthermore, there is nothing in *Padilla* or *Chaidez* that undermines, contradicts, or requires reassessment of the California Supreme Court's holding in *Kim*. We are bound to apply *Kim* to this case and uphold the trial court's order denying Linares's motion to withdraw his guilty plea and vacate his conviction. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) To the extent Linares asserts *Kim*'s reasoning is wrong, it is not for us as a court subordinate to the California Supreme Court to reconsider its reasoning. Rather, Linares's argument is more appropriately addressed to the Supreme Court and/or the Legislature. We conclude the trial court did not abuse its discretion by denying Linares's motion to withdraw his guilty plea and vacate his conviction. (Cf. *Kim*, *supra*, 45 Cal.4th at pp. 1101-1104, 1109; *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1144-1448; *People v. Shokur*, *supra*, 205 Cal.App.4th at pp. 1407-1408.)

### III

### *Remaining Contention*

Linares also contends the trial court erred by denying his motion to withdraw his guilty plea and vacate his conviction because his plea form did not show whether his counsel gave him correct advice regarding the immigration consequences of his guilty plea. However, that argument is moot considering our conclusion above. Assuming

18

arguendo that Linares's counsel did not, in fact, properly advise him of the immigration consequences of his guilty plea, we nevertheless held above there is no writ of error *coram nobis* or other nonstatutory remedy that can provide him with relief in the circumstances of this case. Linares's assertion regarding the effect of his plea form does not affect our disposition of this appeal.

DISPOSITION

The order is affirmed.


McDONALD, J.

WE CONCUR:

NARES, Acting P. J.

HALLER, J.

19