Filed 10/30/14  P. v. Mendoza CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARACELY MORALES MENDOZA,<br><br>    Defendant and Appellant. | G049122<br><br>(Super. Ct. No. 12CF0178)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kazuharu Makino, Judge.  Affirmed.

Law Office of Zulu Ali and Zulu Ali for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

Aracely Morales Mendoza was charged with two counts of possessing methamphetamine for sale with enhancements: Count 1 alleged she possessed over four kilograms and count 2 alleged she possessed over one kilogram. She pled guilty to count 1. The trial court suspended sentencing, ordered her to serve 270 days in jail, and placed her on supervised probation for three years. Approximately one year later, Mendoza filed a petition for writ of error *coram nobis*, alleging her defense attorney failed to adequately advise her of the immigration consequences and, therefore, she received ineffective assistance of counsel. After holding an evidentiary hearing, the court denied the writ petition. We affirm the trial court's order.

## I

Mendoza was born in Mexico and entered the United States in 1999. In 2012, she was arrested for possessing a large quantity of methamphetamine for sale. The information alleged two counts. As to count 1, the information alleged the weight of the methamphetamine exceeded four kilograms triggering an enhancement under Health and Safety Code section 11370.4, subdivision (b)(2) [additional 5-year term]. The information alleged the methamphetamine relating to count 2 exceeded one kilogram triggering an enhancement under Health and Safety Code section 11370.4, subdivision (b)(1) [additional 3-year term].

Mendoza's retained counsel, Richard Escobedo, advised the trial court Mendoza would plead guilty. In May 2012, prior to taking Mendoza's plea, the court advised her, "If you are not a citizen of the United States, the consequence of this conviction will be deportation, exclusion from admission to the United States or denial of naturalization pursuant to the laws of the United States. Do you understand and give up that right?" With the assistance of a Spanish language interpreter, Mendoza replied, "Yes."

The trial court also asked Mendoza if she had signed, initialed, understood, and agreed with the terms and disposition stated on her plea agreement form. She answered affirmatively to these questions.

On the plea agreement form, Mendoza initialed next to the following statement: "I understand if I am not a citizen of the United States, my conviction for the offense charged will have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Her counsel signed the plea form next to the statement acknowledging he had "discussed the possible sentence ranges and immigration consequences with defendant." Similarly, the Spanish language interpreter signed an acknowledgement on the plea from stating he "translated the contents of this form to the defendant in [Spanish]. The defendant told me he/she understood the contents of this form and initialed and signed it in my presence."

Before asking for Mendoza's plea, the trial court asked if she had "an opportunity to speak to . . . Escobedo about the facts, charges and any defenses [she] may have in this case?" She replied, "Yes." The court inquired, "Do you need any more time to talk to your attorney right now?" She answered, "No."

When asked how she wanted to plead to count 1, Mendoza replied, "I plead guilty." The trial court then granted the prosecutor's motion to dismiss count 2 and strike the two enhancements. The court suspended the imposition of a sentence and placed Mendoza on supervised probation for three years and ordered her to serve 270 days in jail. Based on actual time served, the court calculated a total credit of 266 days against the 270. The court imposed several fees and probation conditions.

Initially, the trial court ordered Mendoza to report to probation within 72 hours of her release. Escobedo informed the court "More than likely there is going to be an [Immigration and Customs Enforcement] ICE hold on her." The court modified its order, telling Mendoza, "You are ordered to report to probation within 72 hours of your

release or if you are deported by the federal authorities then you are ordered upon your return to this country to report to probation within 72 hours."

Approximately one year later, Mendoza's counsel, Zulu Ali, filed a petition for writ of error *coram nobis* to vacate the judgment entered against her. Mendoza argued that when she entered her guilty plea her counsel did not tell her there would be negative immigration consequences resulting from the plea. Mendoza asserted that several months after being sentenced she was taken into "immigration custody." Mendoza stated it was not until then she realized she received ineffective assistance of counsel. She explained the time to file an appeal had already passed and she had no other remedy other than a writ for error *coram nobis*.

In August 2013 the court held a hearing on the writ petition. Mendoza testified with the assistance of a Spanish language interpreter. She stated that after pleading guilty she thought she was going to be released and she could return home. Mendoza admitted she knew she was illegally in the United States, and Escobedo knew about her immigration status before she took the plea deal. Mendoza stated Escobedo never said she would be deported by pleading guilty, and he did not tell her she would be ineligible for asylum or other forms of discretionary relief.

Mendoza opined she would not have taken the plea deal if she had known the immigration consequences. She explained, "When I signed this, I didn't know what kind of a felony I was signing for and I didn't know even what a felony or an aggravated felony was. I didn't realize how important it was to fight my case . . . . I don't feel that [Escobedo] helped me in anything because I really didn't see that he was interested in my case." When asked if she knew what she was pleading guilty to, Mendoza replied, "I just wanted to go to my house. I was worried about my children. I have three children." When asked she same question again, Mendoza stated "Right at that moment, I didn't

4

care. I was very confused. I just wanted to get out to be with my children. I told him that I would sign, but all I wanted to do was go and see my children."

Mendoza stated she realized the serious nature of her conviction when the officers at the immigration department laughed at her request for a bail amount because she intended to pay it and go home. Mendoza stated that if she had known the immigration consequences she would have asked her attorney to bargain for a deal that addressed the issue or she would have taken her case to trial.

When asked if the court gave her any explanation as to immigration consequences, Mendoza recalled, "I really didn't understand anything. I was very nervous and . . . there were times that I wasn't even answering. It was the attorney who was answering for me. He was saying yes, yes, yes."

On cross-examination, Mendoza admitted she filled out and initialed the plea form. When asked if the interpreter helped her or talked with her about the form, Mendoza replied, "I was very nervous and either way, I didn't understand. I was very confused because I was worried about my children." The prosecutor asked Mendoza if an interpreter was present. Mendoza replied, "Yes." When asked if the interpreter explained the plea form, Mendoza answered, "There are so many things that he explained to me that I really didn't--I can't understand everything that he explained to me. I've never been in a place like this and I can't understand so many questions just in one moment so quickly."

The trial court heard a much different version of events from Escobedo. He stated he was well aware of Mendoza's immigration status. He explained that in 23 years of practicing law, approximately two-thirds of his clients had immigration issues, "so I always have to advise them of the consequences." Escobedo stated he knew through experience that due to the nature of Mendoza's offense (possession for sale) she would be deported and he told Mendoza this on several occasions. He recalled that a couple of

5

weeks before the plea, he received an offer from the prosecutor and scheduled to meet with Mendoza. He and an associate attorney (who speaks Spanish and previously worked as an interpreter) visited Mendoza "face-to-face" and they spoke for over 30 minutes. Escobedo remembered they discussed the consequences of the plea "and the fact she would be deported based on the convictions." Escobedo told Mendoza there was not much they could do to avoid the immigration issue. He believed she understood the immigration consequences.

When questioned further about the nature of his discussion with Mendoza, Escobedo stated he told her the crime would be considered an aggravated felony and "relief would not be available." He added the plea contemplated less than a year in jail and "that might be a possible relief, but because it was a drug sales charge, that it wasn't going to be much relief for her." Escobedo admitted he did not advise Mendoza about whether she would be eligible for relief such as asylum or "cancellation of removal" (8 U.S.C. § 1229b, subd. (a) [cancellation within discretion of immigration authorities]).

After considering argument from both sides, the court denied the petition. It stated, "The evidence that's in the court records as far as what was done at the time of the guilty plea all indicate the defendant was fully advised of what was required as far as immigration consequences. [¶] Her testimony today is basically she didn't care what she was pleading guilty to, didn't understand anything, but that's in fact contradicted by what she says at the time of the guilty plea. There is no indication from the guilty plea that she had any confusion, lack of knowledge, lack of understanding, and her claim at this point basically has no credibility, so the petition is denied."

II

The Attorney General asserts this court should dismiss the appeal because criminal defendants cannot challenge a final conviction based on ineffective assistance of counsel by using a petition for writ of error *coram nobis*. The Attorney General asserts that according to *People v. Kim* (2009) 45 Cal.4th 1078, 1104 (*Kim*), a trial court lacks

6

jurisdiction to grant a writ of error *coram nobis* under the circumstances present in this case. This legal contention was not raised below. And we find it interesting the Attorney General does not discuss whether the issue was waived. The district attorney fully participated in the hearing and presented oral argument on the merits to the trial court. The district attorney never objected that a writ of error *coram nobis* was improper. We find it surprising the waiver issue was not addressed on appeal when it was the district attorney who failed to raise the issue, given that the Attorney General is very familiar with making a waiver argument when a defendant has failed to raise an objection below.

It appears the Attorney General is correct about the underlying issue: Defendants have many remedies available to raise the issue of ineffective assistance of counsel, but a writ of error *coram nobis* is not one of them. The issue may be raised by the following means: (1) a motion to withdraw plea (Pen. Code, § 1018); (2) a prejudgment motion for new trial (*Kim, supra,* 45 Cal.4th at p. 1104; Pen. Code, § 1182); (3) an appeal (Pen. Code, § 1237); or (4) a petition for a writ of habeas corpus (*People v. Pope* (1979) 23 Cal.3d 412, 426, disapproved on a different ground in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on a different ground in *People v. Hill* (1998) 17 Cal.4th 800, 823). However, a nonstatutory motion to vacate, such as a petition for a writ of error *coram nobis*, is not one of the available remedies to bring a claim for ineffective assistance of counsel. (*Kim, supra*, 45 Cal.4th at pp. 1096, 1104, *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1144, 1147; *People v. Shokur* (2012) 205 Cal.App.4th 1398, 1403-1404 (*Shokur*).)

We are unpersuaded by Mendoza's contention that our Supreme Court's *Kim* decision was superseded by the *earlier* decision *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). The United States Supreme Court rejected the concept that immigration consequences of criminal convictions are collateral and so counsel need not advise clients about them. (*Padilla, supra*, 559 U.S. at p. 360.) The high court analyzed whether

7

Padilla's counsel's representation fell below an objective standard of reasonableness. (*Id.* at pp. 366-368.) It did not discuss or rule on the permissible procedural vehicles for raising the issue. As aptly stated by another appellate court in *Shokur, supra*, 205 Cal.App.4th at page 1405, "*Padilla* does not require states to provide an avenue for noncitizens to challenge their convictions based on an erroneous immigration advisement when no other remedy is presently available. That issue was not presented to the high court as Kentucky permits a motion to vacate a conviction by '[a] prisoner in custody under sentence or a defendant on probation, parole or conditional discharge.' [Citations omitted.]"

Returning to the case before us, we conclude the above legal authority and analysis should have been asserted by the People in the trial court in the first instance. The record shows it was not. The issue was waived. Because the trial court held an evidentiary hearing and ruled on the merits, we will review Mendoza's issues on appeal arising from that ruling. We apply the deferential abuse of discretion standard used in reviewing rulings on petitions for writ of error *coram nobis*. (*Kim, supra,* 45 Cal.4th at pp. 1095-1096.)

"The pleading—and plea bargaining—stage of a criminal proceeding is a critical stage in the criminal process at which a defendant is entitled to the effective assistance of counsel guaranteed by the federal and California Constitutions. [Citations.] It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea. [Citations.] In *Hill v. Lockhart* [(1985) 474 U.S. 52, 58-59] the United States Supreme Court applied the criteria for assessing ineffective assistance of counsel, set forth in *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*), to a claim of incompetent advice as to the decision whether to plead guilty. The court held that in order successfully to challenge a guilty plea on the ground of ineffective assistance of counsel, a defendant must establish not only incompetent

8

performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. [Citation.]" (*In re Alvernaz* (1992) 2 Cal.4th 924, 933-934.)

The court did not abuse its discretion in concluding Mendoza's counsel adequately advised her of negative immigration consequences, and therefore, she received effective assistance of counsel. As noted by the trial court, all the documents and transcripts generated from that hearing showed Mendoza was fully advised of the immigration consequences. She initialed and agreed with the terms and dispositions listed on her plea agreement, including the term she would be deported if she was not a citizen. Her counsel and a Spanish language interpreter signed acknowledgments indicating the plea form was translated and they discussed the immigration consequences with Mendoza. In addition, the court orally cautioned that if she was not a citizen she would be deported as a result of her conviction. Mendoza told the court she had spoken with her attorney about her case and did not need any additional time with him before pleading guilty. All of these facts suggest Mendoza was advised of the immigration consequences and her counsel's performance was not deficient.

At the later evidentiary hearing on the writ petition, the trial court heard two very different versions of what occurred before Mendoza's guilty plea. On appeal, Mendoza contends her testimony provided ample evidence her counsel's performance was deficient. This may be true. However, it is not our job to retry the case. The trial court had the authority to weigh the credibility of Mendoza, who essentially asserted she was told nothing and did not understand any part of the proceedings, against the credibility of Escobedo, who was an experienced attorney, working with many clients facing adverse immigration consequences. We find no reason to hold the court abused its discretion determining Escobedo was the more credible witness. It was reasonable for the court to conclude Mendoza's story was contradicted by what she actually said at the

9

hearing before she pled guilty. She did not say or imply she was confused, needed more time, or requested clarification because she thought too many things were being said at the same time. The trial court asked her two times if she needed additional time to talk with counsel and she refused. She supplied unequivocal responses to the court's questions about waiving her rights, understanding the immigration consequences, and whether she wished to plead guilty or not guilty. Based on this record, we conclude it was not an abuse of discretion for the court to determine Escobedo repeatedly warned Mendoza she would likely be deported if she pled guilty to possessing methamphetamine for sale. Absent evidence Escobedo's performance was defective, we need not reach the second prong of the *Strickland* test, i.e., prejudice.[1]

Alternatively, Mendoza complains it was not enough for Escobedo to discuss the immigration consequence of deportation. She suggests Escobedo performed deficiently by failing to also explain that her guilty plea would have an effect on other discretionary relief (such as "asylum" or "cancellation of removal"). She cites to no authority, and we found none, holding the failure to give these additional advisements amounted to ineffective assistance of counsel. Penal Code section 1016.5, subdivision (a), mandates defendants must be advised of the following three distinct immigration consequences: (1) deportation; (2) exclusion from entry into the United States, and (3) denial of naturalization. Moreover, if we assume for the sake of argument counsel should have discussed other discretionary relief, Mendoza has not demonstrated prejudice because she does not suggest she would have been eligible for asylum or cancellation of removal.

---

[1] We note Mendoza's appellate counsel often refers to her in the briefing as being male, suggesting the text was cut and pasted from another source. Certainly this did not affect our decision, but we caution counsel to be more careful in the future.

10

### III

The order is affirmed.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

MOORE, J.