Filed 9/10/15  P. v. Medrano CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EVELYN PATRICIA MEDRANO,<br><br>    Defendant and Appellant. | B257690<br><br>(Los Angeles County<br>Super. Ct. No. A922067) |

        APPEAL from an order of the Superior Court of Los Angeles County,
Alan B. Honeycutt, Judge.  Affirmed.

        Karlin & Karlin and Marc A. Karlin for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and
Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Evelyn Patricia Medrano appeals the denial of her motion to vacate her 1988 guilty plea to assault with a deadly weapon, brought on the ground she was not advised of the immigration consequences of her plea. We affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Medrano's 1988 plea*

In May 1988, Medrano, a citizen of El Salvador, pleaded guilty to committing assault with a deadly weapon or by means likely to produce great bodily injury (Pen. Code, § 245, former subd. (a)(1)),[1] in Los Angeles County Superior Court, case No. A922067. Although the record is not entirely clear, it appears Medrano served between one and one half to two years in jail or prison pursuant to a plea bargain.

2. *Medrano's 2013 motion to vacate the plea*

On December 9, 2013, Medrano filed a motion to vacate her plea on the ground her trial counsel provided ineffective assistance by failing to advise her regarding the immigration consequences of the 1988 plea. Medrano's declaration in support of the motion explained that she is a citizen of El Salvador, but has lived and worked in the United States since 1979. Her two children and her mother are United States citizens, and her mother is "quite ill." Medrano wishes to "obtain legal immigration status" in the United States, but has been unable to do so due to her conviction in the instant case. She believes that as a result of the conviction, she is subject to immediate removal from the United States and is "disqualified from any form of immigration relief."[2] At the time the motion to vacate was filed, her immigration case was pending before the United States Court of Appeals for the Ninth Circuit.

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     Medrano does not provide citation to legal authority demonstrating that her 1988 conviction is a deportable offense or will have the consequences she suggests. We assume for purposes of argument that her statements regarding the immigration consequences of her plea are accurate.

Medrano's declaration further averred that she did not recall her defense counsel in the 1988 case asking whether she was a United States citizen or advising her that a guilty plea would negatively affect her immigration status. Defense counsel did not suggest that she retain an immigration attorney to advise her before entering her plea. When Medrano entered her plea she was nervous. She did not recall the trial court explaining the potential immigration consequences to her. Had she known that her plea would "prohibit [her] from any immigration relief in the future," she would not have pleaded guilty.

3. *The 2014 evidentiary hearing on the motion to vacate the plea*

On July 9, 2014, the trial court conducted an evidentiary hearing on the motion, at which Medrano and her appointed trial counsel in the 1988 case, Walter Urban, testified. It is apparent from the record that the trial court and parties considered the reporter's transcript of the 1988 plea proceeding, as well as the court file, which contained a plea form executed by Medrano. The court took judicial notice of the file and the transcript of the 1988 proceeding. Appellant has not made these materials a part of the record on appeal. We assume the accuracy of the 2014 trial court's and parties' statements about the contents of the 1988 record, which appear to be undisputed.

The plea form Medrano executed stated, inter alia: "I understand that . . . if I am not a citizen of the United States, the conviction for the offense charged may have a consequence of deportation, exclusion from admission into the United States or denial of naturalization pursuant to the laws of the United States." Medrano initialed a box next to the statement. She also signed and initialed a paragraph stating, "I have personally initialed each of the above boxes, discussed them with my attorney" and "I understand each and every one of those rights outlined above, and I hereby waive and give up each of them in order to enter my plea to the above charges." Her counsel, Urban, also executed the plea form. At the plea proceeding the trial court asked Medrano whether she was a United States citizen; she answered, " 'Yes.' " The 1988 court also asked whether Medrano had placed her initials and signature on the plea form, and she answered, " 'Yes.' " The court then asked: " 'Did you read it?' " and " 'Did you

3

understand it?' " Medrano again answered " 'yes' " to both questions. The record did not reflect that the court orally advised Medrano of the potential immigration consequences of the plea.

Medrano testified as follows. She and Urban met once, briefly, to discuss the plea while she was in custody. Urban did not inquire about her immigration status or explain the immigration consequences of a plea. She was, at that time, conversant in English but preferred Spanish. She did not really understand what Urban told her about the plea. He simply told her to sign and initial the forms. He also told her to answer " 'yes' " to all the judge's questions. He did not explain her rights to her, nor did he explain the terms " 'deportation,' " " 'exclusion from the United States,' " or " 'denial of immigration [or] naturalization.' " The trial court likewise did not discuss the immigration consequences of the plea with her. Medrano told the court that she was a United States citizen. She mistakenly believed she was a United States citizen because she lived in the United States. She admitted signing and initialing the plea form. She took the plea deal offered by the People because she "wanted to get out. . . . I wanted to get out of jail. I didn't want to stay there." Her understanding was that if she did not accept the plea, she could be incarcerated for seven years.

Urban testified that at the time he represented Medrano, he was a criminal defense attorney and former public defender with approximately 14 years experience. He had no independent recollection of representing Medrano. However, he typically advised a defendant of the potential for immigration consequences prior to any plea discussions. If the defendant stated that he or she was a United States citizen, Urban accepted the defendant's representation and did not discuss the immigration consequences of a plea. If a client had difficulty communicating in English, Urban would use an interpreter. Urban never told a client to answer "yes" to the trial court's questions without understanding what was being asked. He never advised a client not to read a waiver form, or to initial a waiver form without reading its provisions. He "never told a client to answer any question 'yes' unless they understood the question . . . ."

4

Although Medrano's written motion was based entirely on her contention that defense counsel had provided ineffective assistance, at the evidentiary hearing the parties and the court focused on whether the 1988 trial court had advised Medrano of the potential immigration consequences of her plea in compliance with section 1016.5. The 2014 court ruled that the plea form, which Medrano had signed and initialed, constituted a proper advisement under section 1016.5 and a further oral advisement was unnecessary. Accordingly, it denied the motion to vacate the plea.

## DISCUSSION

"A noncitizen who has been convicted of a felony based on a plea of guilty or nolo contendere, but who claims that he [or she] was not advised on the immigration consequences of his or her plea, has three possible remedies. (1) He or she can appeal from the judgment, pursuant to section 1237, if the record reflects the facts on which the claim is based. (2) He or she can bring a statutory motion to vacate the judgment, under section 1016.5, which requires the trial court to advise the pleading noncitizen felony defendant of the potential immigration consequences of his plea, and requires that the plea be set aside if it fails to do so. (3) He or she may petition for a writ of habeas corpus raising the issue of ineffective assistance of counsel, under theories approved in *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, and *In re Resendiz* (2001) 25 Cal.4th 230. [Citation.] These are the only potentially available remedies." (*People v. Aguilar* (2014) 227 Cal.App.4th 60, 68, fn. omitted.)[3]

Preliminarily, we observe that the first and third of these remedies are unavailable to Medrano, as she appears to recognize. The time to bring a direct appeal pursuant to section 1237 has long since passed. Nor can we provide relief by treating the motion as a petition for a writ of habeas corpus. Because Medrano is neither in actual nor constructive state custody, she is ineligible as a matter of law for habeas corpus relief.

---

[3] Additionally, prior to judgment, a defendant may move to withdraw his or her plea pursuant to section 1018. (*People v. Shokur* (2012) 205 Cal.App.4th 1398, 1403-1404.) Obviously, that remedy is unavailable here because judgment was entered in Medrano's case in 1988. (See *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1145.)

(*People v. Villa* (2009) 45 Cal.4th 1063, 1066, 1068-1069; *People v. Aguilar, supra,* 227 Cal.App.4th at p. 68; *People v. Mbaabu, supra,* 213 Cal.App.4th at p. 1149.) " '[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it' [citation]." (*People v. Villa, supra,* at p. 1071; *People v. Aguilar, supra,* at p. 68.) Here, it is undisputed that Medrano completed her sentence years ago and is not in state custody. Therefore, she is ineligible for habeas corpus relief.

Medrano contends, however, that (1) she is entitled to relief under section 1016.5 because "there is no record" she "received the required advisement"; and (2) because her counsel allegedly failed to address the immigration consequences of her plea, she received ineffective assistance of counsel, a wrong which may be remedied via a nonstatutory motion to vacate the judgment.

1. *Medrano's claim that the trial court failed to advise her pursuant to section 1016.5*

Section 1016.5, subdivision (a), requires that prior to accepting a plea of guilty or no contest, a trial court must advise the defendant that: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (See *People v. Martinez* (2013) 57 Cal.4th 555, 558.) Subdivision (b) of section 1016.5 provides in pertinent part: "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the

6

required advisement." (See *People v. Martinez, supra,* at pp. 558-559, 562; *People v. Arriaga* (2014) 58 Cal.4th 950, 957-958.) In enacting the statute, the Legislature demonstrated concern that "those who plead guilty or no contest to criminal charges are aware of the immigration consequences of their pleas." (*People v. Kim* (2009) 45 Cal.4th 1078, 1107.)

To prevail on a motion brought pursuant to section 1016.5, a defendant must establish: (1) the advisements were not given; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one of the specified adverse immigration consequences; and (3) properly advised, the defendant would have rejected the plea offer in the hope or expectation that he or she might negotiate a different bargain or proceed to trial. (*People v. Martinez, supra,* 57 Cal.4th at p. 567; *People v. Arriaga, supra,* 58 Cal.4th at pp. 957-958; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.) We review a trial court's denial of a section 1016.5 motion for abuse of discretion. (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1517-1518; *People v. Chien* (2008) 159 Cal.App.4th 1283, 1287.)

Here, assuming arguendo Medrano's motion may properly be construed as a section 1016.5 motion,[4] it was properly denied because the record supports the trial court's finding that Medrano was advised of the immigration consequences of her plea as required by section 1016.5. Medrano signed a plea form containing a section 1016.5 advisement that mirrored the statutory language and warned her of the three possible immigration consequences enumerated in section 1016.5. Medrano placed her initials next to the relevant paragraph. Before taking Medrano's plea, the trial court confirmed that Medrano had read and understood the provisions of the plea form before signing and initialing it. The trial court was not required to provide a further verbal advisement;

---

[4] As noted, Medrano's written motion was not characterized as a section 1016.5 motion. Medrano's only mention of section 1016.5 was to argue that her ineffective assistance claim was not extinguished, even if she had been given the section 1016.5 advisements by the trial court. Because the trial court treated the motion as a section 1016.5 motion, however, we address Medrano's argument.

7

"a validly executed waiver form is a proper substitute for verbal admonishment by the trial court." (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 521; *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175.) Thus, the evidence at the hearing established Medrano was properly advised in compliance with section 1016.5, and the trial court's ruling was not an abuse of discretion.

  2. *Ineffective assistance of counsel claim*

  In *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), the United States Supreme Court held that an attorney's misadvice or failure to advise about the potential immigration consequences of a plea may constitute ineffective assistance. There, the defendant, a Honduran citizen, pleaded guilty to transporting a large quantity of marijuana, after his attorney erroneously advised that he need not worry about the immigration consequences of his plea. (*Id.* at p. 359.) When Padilla sought postconviction relief, the Kentucky Supreme Court held the Sixth Amendment's guarantee of effective assistance of counsel did not protect a criminal defendant from erroneous advice about the collateral consequences of a conviction. (*Padilla*, at pp. 359-360.) *Padilla* disagreed, holding that constitutionally competent counsel must inform his or her client whether a plea carries a risk of deportation. (*Id.* at pp. 360, 374.) *Padilla*'s holding was not limited to affirmative misadvice; instead, the high court reasoned that an attorney has an affirmative duty to advise a client when the client faces a risk of deportation. (*Id.* at pp. 370-371, 374.) Because it set forth a new rule of law, *Padilla*'s holding cannot be applied retroactively. (*Chaidez v. United States* (2013) 133 S.Ct. 1103, 1105.)

  Prior to *Padilla,* our Supreme Court held in *In re Resendiz, supra,* 25 Cal.4th 230, that an attorney's affirmative misadvice regarding the immigration consequences of a guilty plea may give rise to a claim for ineffective assistance of counsel. (*Id.* at pp. 235, 240.) In *Resendiz,* a habeas matter, the court reasoned that a defendant may pursue a claim for relief for ineffective assistance of counsel based on counsel's misadvice regarding a plea's immigration consequences, nothwithstanding the fact that the trial court properly advised the defendant under section 1016.5. (*Resendiz,* at pp. 240-242;

8

*People v. Aguilar, supra,* 227 Cal.App.4th at p. 72.)  The *Resendiz* court was "not persuaded that the Sixth Amendment imposes a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." (*In re Resendiz,* at pp. 249-250.)

Medrano argues, relying on *Padilla,* that defense counsel must investigate the immigration consequences of a plea, provide affirmative advice regarding those consequences, and attempt to negotiate a disposition that avoids negative immigration repercussions.  She acknowledges that under *Chaidez v. United States, Padilla*'s holding may not be retroactively applied, but avers that this is insignificant because California law held, before *Padilla,* that defense counsel was obliged to advise a defendant regarding the immigration consequences of a plea.  While we do not necessarily agree with these contentions, we need not reach them because a nonstatutory motion is not available to Medrano.[5]

Although Medrano's motion was not denominated as such, a "nonstatutory motion to vacate has long been held to be the legal equivalent of a petition for a writ of error *coram nobis.*" (*People v. Kim, supra,* 45 Cal.4th at p. 1096; *People v. Mbaabu, supra,* 213 Cal.App.4th at p. 1146.)  To prevail on a *coram nobis* petition, the petitioner must establish that:  (1) some fact existed which, without her fault or negligence, was not presented to the trial court, and which would have prevented the rendition of the judgment; (2) the newly discovered evidence does not go to the merits of the issues of fact determined at trial; and (3) petitioner did not know nor could she have, with due diligence, discovered the facts upon which she relies any sooner than the point at which

---

[5]    A statutory section 1016.5 motion cannot be used to assert *defense counsel's* failure to provide adequate representation relating to immigration consequences. (*People v. Chien, supra,* 159 Cal.App.4th at p. 1285; *People v. Aguilar, supra,* 227 Cal.App.4th at p. 71; *People v. Mbaabu, supra,* 213 Cal.App.4th at pp. 1145-1146.) "Section 1016.5 addresses only the trial court's duty to advise, not counsel's, and provides a specific remedy for that particular failure." (*People v. Chien*, *supra*, at p. 1288.)  Section 1016.5 does not "empower the court to vacate a conviction or set aside a plea for counsel's failure to fulfill his or her duty in that regard." (*People v. Aguilar, supra,* at p. 71.)

9

she petitions for the writ.  (*People v. Kim, supra,* at p. 1093; *People v. Mbaabu, supra,* at pp. 1146-1147; *People v. McElwee* (2005) 128 Cal.App.4th 1348, 1352.)  The writ is " ' "not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have *prevented the rendition of the judgment*," ' " such as a party's death, infancy, or insanity, or that his plea was procured by means of fraud or threat of violence.  (*People v. Kim, supra,* at pp. 1092, 1094.)

It is settled that a "writ of error *coram nobis,* based on a claim of ineffective assistance of counsel for failure to advise the defendant of the immigration consequences of  his or her plea, cannot be used to challenge a conviction or withdraw the plea." (*People v. Aguilar, supra,* 227 Cal.App.4th at p. 68; *People v. Kim, supra,* 45 Cal.4th at p. 1104 ["That a claim of ineffective assistance of counsel, which relates more to a mistake of law than of fact, is an inappropriate ground for relief on *coram nobis* has long been the rule"]; *People v. Mbaabu, supra,* 213 Cal.App.4th at pp. 1144-1145; *People v. Shokur, supra,* 205 Cal.App.4th at pp. 1403-1404; *People v. Chien, supra,* 159 Cal.App.4th at p. 1290.)

In *People v. Kim*, for example, the defendant, Kim, alleged two purported mistakes of fact:  first, that he was unaware his plea to petty theft with a prior would subject him to deportation; and second, he was unaware that, if deported, he would face religious persecution.  (*People v. Kim, supra,* 45 Cal.4th at p. 1096.)  Our Supreme Court held Kim had "not demonstrated that facts existed at the time of his plea that satisfy the strict requirements for this extraordinary type of collateral relief from a final judgment. Specifically, he has not shown ' "that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment." ' "  (*Id.* at pp. 1101-1102.)  Counsel's failure to fully advise Kim of the consequences of his plea or seek an immigration-neutral disposition involved only "the *legal effect* of his guilty plea and thus [were] not grounds for relief on *coram nobis*."  (*Id*., at p. 1102; see also *People v. Aguilar, supra,* 227 Cal.App.4th at p. 69.)  "New facts that would merely have affected

10

the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment." (*People v. Kim, supra*, at p. 1103.) Here, as in *Kim,* Medrano's allegations that her 1988 trial counsel failed to advise her regarding the immigration consequences of her plea, and that she was unaware of such consequences, are not the sort of new facts that give rise to a *coram nobis* remedy. (*Id.*, at p. 1103; *People v. Aguilar, supra,* at pp. 69-70.)

Citing *Murgia v. Municipal Court* (1975) 15 Cal.3d 286, *People v. Fosselman* (1983) 33 Cal.3d 572, and *In re Sheena K.* (2007) 40 Cal.4th 875, Medrano attempts to avoid this result. She argues that "California courts must entertain non-statutory motions" brought on constitutional grounds, and a trial court has the inherent authority to provide a remedy for a constitutional violation, even if no statute provides one.

Medrano's arguments have been considered and rejected by *People v. Shokur, supra,* 205 Cal.App.4th 1398 and *People v. Aguilar, supra,* 227 Cal.App.4th 60. "*Padilla* does not require states to provide an avenue for noncitizens to challenge their convictions based on an erroneous immigration advisement when no other remedy is presently available." (*People v. Shokur, supra,* at p. 1405; see also *People v. Aguilar, supra,* at p. 74 [same].) Neither *Padilla* nor California authorities "require a nonstatutory motion safety net to provide a remedy when other remedies through which relief might have been obtained are no longer available." (*People v. Shokur, supra,* at p. 1401; *People v. Aguilar, supra,* at p. 73 [*Padilla* does not support an argument "that an unlabelled nonstatutory motion affords [a defendant] a remedy when, as here, relief by way of *coram nobis* is foreclosed as a matter of law"].) "[T]he fact that [the defendant] may be entitled to use any available remedy to seek relief from what he claims was ineffective assistance of counsel does not mean that any particular remedy is available to him for that purpose." (*People v. Aguilar, supra,* at p. 72.) *Padilla* "held that a claim of ineffective assistance of counsel may be based upon misadvising or failing to advise the defendant regarding possible immigration consequences of a plea. [Citation.] But it did not hold

11

that such a claim may be brought long after [the defendant's] right to pursue available remedies [has] lapsed." (*People v. Aguilar, supra,* at p. 73.)

*Shokur* considered and rejected the notion that two of the three cases cited by Medrano, *Murgia v. Municipal Court* and *People v. Fosselman,* require a different result. Both *Fosselman* and *Murgia* involved a trial court's jurisdiction to consider a constitutional claim made in a case *then pending before the court.* (*People v. Shokur, supra,* 205 Cal.App.4th at pp. 1405-1406.) In *Murgia,* the question was "whether criminal defendants may obtain discovery relevant to a claim that certain penal statutes were being discriminately enforced against them." (*People v. Shokur, supra,* at p. 1405.) In a footnote, *Murgia* concluded a claim of discriminatory prosecution should be decided by the trial judge, not the jury, by means of a nonstatutory motion to dismiss. (*Murgia v. Municipal Court, supra,* 15 Cal.3d at p. 293, fn. 4, cited by *People v. Shokur, supra,* at p. 1405.) "*Murgia v. Municipal Court* clearly stands for the proposition that a trial court has jurisdiction to determine whether the charges filed against a defendant in an action pending before it were filed as the result of unlawful discriminatory enforcement. [Citation.] It is one thing to say the court has jurisdiction to consider a constitutional claim in a case then pending before it. It is quite another to conclude a court has jurisdiction to consider a constitutional claim long after its judgment has become final *and* the time limits on the various postjudgment vehicles in which such a constitutional claim may be raised have passed. To interpret *Murgia* as defendant does would mean a claim of ineffective assistance of counsel, or any other constitutional challenge for that matter, may be brought *at any time* after judgment," a conclusion which would render meaningless the "time restraints applicable to the various means of challenging the judgment." (*People v. Shokur, supra,* at pp. 1405-1406.)

In *Fosselman,* the Supreme Court concluded the defendant could raise an ineffective assistance of counsel claim as a ground for a new trial even though section 1181, the statute controlling new trial motions, did not expressly list ineffective assistance as a ground for granting a new trial. (*People v. Fosselman, supra,* 33 Cal.3d at p. 582; *People v. Shokur, supra,* 205 Cal.App.4th at p. 1406.) *Shokur* concluded

12

*Fosselman* has no application to the circumstances present here, explaining that the defendant had failed to avail himself of various remedies when they were available, and "*Fosselman*, like *Murgia*, does not stand for the proposition that the trial court retains jurisdiction for all time to consider belated constitutional challenges to a long-since final judgment." (*People v. Shokur, supra,* at p. 1406, fn. omitted; *People v. Chien, supra,* 159 Cal.App.4th at p. 1289.)

The main question in *In re Sheena K.,* also cited by Medrano, was whether the doctrine of forfeiture or waiver applies to an appellate challenge to a probation condition on the ground it was unconstitutionally vague or overbroad on its face. (*In re Sheena K., supra,* 40 Cal.4th at p. 878.) Nothing in *Sheena K.* supports Medrano's argument here.

In sum, "[h]aving failed to pursue any of the remedies provided by law, defendant may not now, years later, obtain relief via a nonstatutory motion to vacate the judgment." (*People v. Shokur, supra,* 205 Cal.App.4th at p. 1406.) The trial court properly denied the motion to vacate the plea.[6]

---

[6]    Given our conclusion, we do not reach the parties' arguments regarding whether Medrano has shown her counsel's purportedly ineffective performance was prejudicial.

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:



EDMON, P. J.



JONES, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.